**STATE STREET BANK & TRUST COMPANY, a Massachusetts Company, Plaintiff,**

v.

**MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, a New York Corporation, Defendant.**

**No. 91 Civ. 8122 (WCC).**

United States District Court,
S.D. New York.

Jan. 15, 1993.

As Amended Feb. 8, 1993.

Pachulski, Stang, Ziehl & Young, P.C., Los Angeles, CA (Larry W. Gabriel, pro hac vice, of counsel), for plaintiff.

Shanley & Fisher, P.C., New York City (Charles A. Reid, III, Mark Diana, Morristown, NJ, of counsel), for defendant.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

State Street Bank and Trust Company (State Street) brings this action against The Mutual Life Insurance Company of New York (MONY) for breach of contract, fraud, negligent misrepresentation, conversion, and various state statutory violations.[1] The matter is before this Court on the parties' cross motions for summary judgment. Defendant moves for summary judgment on all the claims, while plaintiff moves for summary judgment on the breach of contract and one of the state law statutory claims. Plaintiff's motion is denied in all respects. Defendant's motion is denied as to the contract and conversion claims, denied in part as to the state statutory claims, and granted as to the fraud and negligent misrepresentation claims.

## BACKGROUND

State Street is a financial institution which provides various investment services for employee benefit plans throughout the country. MONY is an insurance company which offers investment contracts to such plans. In mid 1990, State Street solicited bids for Guaranteed Investment Contracts (GICs) and MONY submitted its GIC bid in conformity with State Street's bid specifications. Gaffney Dep. at 47–48; Bevis Dep. at 20. In July and October of 1990, State Street, as trustee for four employee retirement plans, contracted with MONY for the purchase of four GICs. Under the contracts, State Street deposited various sums with MONY and MONY guaranteed a fixed rate of return on those deposits for a specified term.[2] All the GICs in question contain identical withdrawal provisions. The contracts allow State Street, upon 90 days notice, to withdraw the funds from the GICs before the expiration of the term subject to an early withdrawal penalty calculated by means of a Market Value Adjustment (MVA) formula. Contracts 2.3(a). The objective of the MVA formula is outlined in the contract, but the precise derivation and calculation of the formula is left to MONY's discretion. *Id.* The GICs also require MONY to provide State Street with a written copy of the MVA formula. *Id.*

The parties' reciprocal performances on the GICs progressed without incident until July 19, 1991 when Moody's reduced MONY's credit rating from Aa2 to Baa1. Katz Dep. at 172. Soon after the downgrade, officers of State Street began discussing the possibility of terminating the GICs. Gaffney at 110–15. On July 22, 1991, in connection with this review, State Street requested and was sent a copy of the then applicable MVA formula. Gaffney at 84–85. As confirmed by subsequent letters, the original MVA formula, calculated on the basis of market conditions prevailing at the time, resulted in almost no

1. The original complaint contained a claim for ERISA violations, but plaintiff voluntarily dismissed the ERISA claim with prejudice subject only to reinstatement if the state law claims are preempted by ERISA.

2. On July 1, 1990, the parties formed the Softech GIC # MM71289 which called for $1,310,-000.00 to be deposited with MONY on July 1, 1990, and additionally Softech was to deposit with MONY all payments from July 1, 1990 through December 31, 1990 made to it by its participants (totaling approximately $30,000). MONY guaranteed a rate of 9.41% per annum compounded annually through June 30, 1995.

Compl.Ex.B. On July 11, 1990, the parties formed the Teamsters/UPS GIC # MM71300 which called for $9,161,510.72 to be held by MONY until June 30, 1995 at a rate of 9.23% per annum, compounded annually. Compl.Ex.D. On July 13, 1990, the parties formed the Bethlehem Steel GIC # MM71318 which called for $5,400,000 to be held by MONY until June 30, 1995 at a rate of 9.24% per annum, compounded annually. Compl.Ex.A. On October 1, 1990, the parties formed the Blue Circle GIC # MM71372 which called for $891,191.92 to be held by MONY from October 17, 1990 to September 30, 1995 at a rate of 8.64% per annum, compounded annually. Compl.Ex.C.

penalty for early withdrawal.[3] The following week State Street submitted its notice to withdraw all funds held in the GICs.[4] During the 90 days between notice and withdrawal, MONY revised the MVA formula so that the penalty for early withdrawal increased to between 3.3% and 6% of the book value of the GICs. State Street received a written statement of the revised formula on October 23, 1991. Golden Decl. in Supp. ¶ 11; Suppl. Reid Certif. Ex. 2. The contracts were paid pursuant to this revised MVA formula.[5] State Street brings this action to recover the early withdrawal penalties, totaling $697,-145, which were levied against it pursuant to the revised MVA formula.

## DISCUSSION

█ Summary judgment is granted only when, after drawing all reasonable inferences in favor of the party opposing the motion, no reasonable trier of fact could find for the nonmoving party. *Lund's, Inc. v. Chemical Bank,* 870 F.2d 840, 844 (2d Cir.1989). A summary judgment is not appropriate where material factual matters are in dispute. *National Union Fire Ins. Co. v. Turtur,* 892 F.2d 199, 203 (2d Cir.1989). The breach of contract, conversion, and Massachusetts unfair business practice claims in the case at bar raise factual issues that require the denial of summary judgment. However defendant's motion for summary judgment on the fraud, negligent misrepresentation, and other state statutory claims is granted.

3. Per MONY's letters of late August 1991, there would be no penalty assessed against the Teamsters/UPS (#MM71300) or Blue Circle (#MM71372) GICs, Def's Ex. 17, 19, and the Bethlehem Steel GIC (#MM71318) and the Softech GIC (#MM71289) would be paid 99.71520% and 99.7864% of book value respectively. Def's Ex. 18; More Definite Statement ¶ 12A(d).

4. Termination notice on the Teamsters/UPS and Blue Circle GICs was sent on July 23, 1991. Pl's Ex. A(6); Gaffney Dep. at 23, 35. Termination notice on the Bethlehem Steel and Softech GICs was sent on July 29, 1991. Pl's Ex. A(7).

## I. The Cross Motions for Summary Judgment on the Contract Claim

█ Both parties move for summary judgment on the contract claim. However, all the theories which the parties claim support their respective motions are either legally inadequate or require the Court to make a determination of disputed facts. Therefore, the motions for summary judgment on the contract claim are denied.

The relevant contracts provide:

2.3 Withdrawals from the general Investment Accumulation Fund shall be made in accordance with the following provisions:

(a) At any time prior to the Interest Expiry Date, the contractholder may, by giving MONY at least 90 days advanced written notice, withdraw the balance in the General Investment Accumulation Fund. However, before making any such withdrawal for payment to the Contractholder, MONY shall have the right to withdraw from the General Investment Accumulation Fund (i) the amount it determines to be appropriate in order to recognize the excess, if any, of the earnings rate allocable to funds currently being invested over the earnings rate allocable to the funds being released ...

MONY shall provide the Contractholder with a written statement as to the terms, conditions and assumptions used in determining the amount to be withdrawn pursuant to clause (i) of the preceding paragraph. Contract 2.3(a).

Defendant argues that the first paragraph of this clause gives it complete discretion to set any MVA formula at any time before

5. On October 23, 1991 $9,142,224.14 was paid on the Teamsters/UPS GIC (#MM71300) and $367,-438 was withheld pursuant to the revised MVA. On October 28, 1991 $1,199,603.09 was paid on the Softech GIC (#MM71289) and $46,093 was withheld pursuant to the revised MVA. On November 1, 1991 $5,187,236.50 was paid on the Bethlehem Steel GIC (#MM71318) and $230,357 was withheld pursuant to the revised MVA. On November 8, 1991 $782,783,015 was paid on the Blue Circle GIC (#MM71372) and $53,257.00 was withheld pursuant to the revised MVA. Compl. ¶ 16(a)–(d); Answer ¶ 15.

payment, and since payment was made after the new MVA formula was set, defendant did not breach the contracts. We find that the contract language, which describes the basis for determining the MVA, limits defendant's formula-setting discretion, and whether the revised MVA formula is proper given these limitations is a matter of fact to be resolved at trial. Thus, defendant's motion for summary judgment on the contract claim is denied.

Plaintiff's theories for summary judgment on the contract claim largely rely on the second paragraph of clause 2.3(a) which requires defendant to provide plaintiff with a written statement of the terms, conditions and assumptions used in determining the MVA. Plaintiff claims alternatively that either defendant failed to make the required statement in a timely manner or defendant made the statement and subsequently failed to comply with it. However, plaintiff's arguments are either not supported by the language of the contract or raise disputed matters of fact. Therefore, these contentions do not support a summary judgment for plaintiff on the contract claim.

Plaintiff's final theory for summary judgment on the contract claim is that defendant breached the contract by violating its fiduciary duty under ERISA. This argument is without merit and, therefore, plaintiff's motion for summary judgment on the contract claim is denied.

### A. Defendant's Summary Judgment Motion on the Contract Claim

Defendant argues that summary judgment should be granted to it on the contract claim because clause 2.3(a) allows it to set an MVA formula to withdraw from the account "the amount it determines to be appropriate". Given this unbridled discretion, defendant contends its application of the revised MVA formula could not violate the agreement. Def's Br. in Supp. at 28–36. However, defendant fails to cite the subsequent contract language which limits its formula-setting discretion. The contract only allows defendant to withdraw "the amount it determines to be appropriate *in order to recognize the excess, if any, of the earnings rate allocable to funds currently being invested over the earnings rate allocable to the funds being released."* Plaintiff contends that this contract language only permits defendant to create a liability-based MVA formula,[6] and points to defendant's practice of using liability-based MVA formulae from the early 1980's through August of 1991. Pl's Br. in Opp. at 6–7, 14–25; Levine Dep. at 54; Pl's Decl. Ex. 8–11. Defendant contends that the clause grants it the discretion to establish an asset-based MVA formula.[7] Hardy Dep. at 39–40; Katz Dep. at 193–94. While we find defendant's contention somewhat implausible, the contract language does not clearly dictate, nor do the undisputed facts indicate, which type of MVA formula may be established under the GICs. The interpretation of an ambiguous clause such as this is a factual matter to be resolved at trial. *Commercial Union Ins. Co. v. Boston Edison Co.*, 412 Mass. 545, 557, 591 N.E.2d 165, 172 (1992).[8] Therefore, defendant's motion for summary judgment on the contract claim is denied.[9]

---

**6.** A liability-based formula corrects for the difference between the rate State Street receives pursuant to the GICs ("the earnings rate allocable to funds currently being invested") and the return State Street could receive on the funds in the open market once withdrawn ("the earnings rate allocable to the funds being released"). Pl's Br. in Opp. at 6.

**7.** An asset based formula corrects for the difference between the rate MONY receives on the investments it made to support the GIC's ("the earnings rate allocable to funds currently being invested") and the rate MONY could receive on investments made at the time of withdrawal ("the earnings rate allocable to the funds being

released"). Pl's Br. in Opp. at 20–21; Def. Br. in Supp. at 20.

**8.** The parties agree that Massachusetts law applies to this action. Pl's Br. in Supp. at 11; Def's Br. in Supp. at 28 n. 14.

**9.** Plaintiff's arguments in support of its motion for summary judgment on the contract claim, although insufficient to support summary judgment, raise issues of fact which also require the Court to deny defendant's summary judgment motion on the contract claim.

Plaintiff also argues that Massachusetts law implies a covenant of good faith and fair deal-

## B. Plaintiff's Summary Judgment Motion on the Contract Claim

Plaintiff has four alternative theories for summary judgment on the contract claim. Each of these theories either is not supported by the undisputed facts or is legally inadequate. Therefore, plaintiff's summary judgment motion on the contract claim is denied.

■ Plaintiff's first argument for summary judgment on the contract claim is that defendant breached the contract by failing to provide plaintiff with a written statement of the MVA formula within a reasonable time. Where a contract fails to specify a time for the performance of a contractual duty, Massachusetts law implies a term requiring the duty to be performed within a reasonable time. *See Thermo Electron Corp. v. Schiavone Constr. Co.*, 958 F.2d 1158, 1165 (1st Cir. 1992) (general contractor's delay did not repudiate its agreement with a subcontractor when the agreement did not specify a time of performance and delay was not unreasonable); *Bushkin Assoc., Inc. v. Raytheon Co.*, 815 F.2d 142, 146 (1st Cir. 1987) (when a contract is silent as to time, the contract shall exist for a reasonable time). Plaintiff argues that since the second paragraph of clause 2.3(a) fails to specify the time period within which MONY was required to provide State Street with a written statement of the MVA formula, defendant was obligated to provide the statement within a reasonable time. Plaintiff further contends that the statement would only have been provided within a reasonable time if it was provided before State Street's notice of termination.[10] However, we are persuaded by defendant's argument that clause 2.3(a), when read in context, allows defendant to provide the written statement at any time before payment. Def's Br. in Opp. at 7–8. Massa-chusetts law requires that contracts be read as a whole. *Massachusetts Mun. Wholesale Elec. Co. v. Town of Danvers*, 411 Mass. 39, 45–46, 577 N.E.2d 283, 288 (1991) (contracts must be read as a whole); *Thomas v. Christensen*, 12 Mass.App.Ct. 169, 422 N.E.2d 472, 476–77 (1981) (words of an integrated contract can only be understood in context). The first paragraph of clause 2.3(a) allows defendant to set and calculate the MVA formula at any time before payment, and the second paragraph of the clause merely requires defendant to provide plaintiff with a written statement of the formula used to determine the withdrawals made pursuant to the first. We read the second paragraph of clause 2.3(a) in the context of the first paragraph of the clause and find that the written statement of the formula could be provided by the defendant any time before withdrawal. Since the contract as a whole does not fail to specify when the written statement of the MVA formula may be provided, the Court will not read a "reasonable time" provision into the contract. Therefore, plaintiff's theory does not support a summary judgment in its favor on the contract claim.

Plaintiff's second argument for summary judgment on the contract claim is that, even accepting defendant's interpretation of the clause, the required written statement of the MVA formula was untimely because it was not received before payment was made on each GIC. Pl's Br. in Supp. at 12. We find that this theory is not supported by the undisputed facts. The parties agree that defendant telecopied the revised MVA formula to plaintiff on October 23, 1991. Golden Decl. in Supp. ¶ 11; Suppl. Reid Certif. Ex. 2. It is also undisputed that the Softech, Bethlehem Steel, and Blue Circle GICs were paid after this date.[11] Defendant paid the Team-

10. The contracts require that the notice of termination be made 90 days before payment of the funds. Contracts 2.3(a).

11. The Softech GIC (#MM71289) was paid on October 28, 1991. The Bethlehem Steel GIC (#MM71318) was paid on November 1, 1991, and the Blue Circle GIC (#MM71372) was paid

ing in the GICs, and whether defendant violated the covenant is a factual matter that requires us to deny defendant's summary judgment motion on the contract claim. Pl's Br. in Opp. at 26. Having found another disputed factual matter, we need not reach this issue.

sters/UPS GIC on the same day it provided plaintiff with a written statement of the revised MVA formula. Compl. ¶ 16(a); Answer ¶ 15. Plaintiff claims that on October 23, 1991, the notice of the change in the MVA formula was received after the payment of the Teamsters/UPS GIC, Golden Decl. ¶ 11, while defendant claims that the statement arrived before the payment. Suppl. Reid Certif. Ex. 2. This factual dispute requires denial of plaintiff's motion for summary judgment on this theory.

■ Plaintiff's third theory for summary judgment on the contract claim is that, even if the first paragraph of clause 2.3(a) gives defendant the discretion to set the MVA formula at any time prior to payment, defendant could not change the formula once it supplied plaintiff with the original MVA formula on July 22, 1991. Pl's Br. in Supp. at 13. Plaintiff claims that the July 22, 1991 statement was incorporated into the contract, and thus the new MVA formula breached the contract. Plaintiff's argument does not support a summary judgment in its favor because there is an alternative reasonable interpretation of the facts. Defendant argues that the written statement required by the second paragraph of clause 2.3(a) does not limit defendant's right, established by the first paragraph of clause 2.3(a), to set or alter the formula at any time before payment. Def's Br. in Opp. at 18–20. Defendant contends that the written statement requirement only obligates MONY to inform State Street in writing when it exercises its discretion under the clause to change the formula. This interpretation is supported by the fact that only "the President, a Vice–President or the Secretary of

MONY has the authority to make ... any representation ... to modify, enlarge or vary the Contract, or to waive the requirements thereof." Contracts 4.1. Since the July 22, 1991, correspondence was not issued by either the president, a vice-president, or the secretary of MONY, a reasonable fact finder may conclude that the aforementioned letter was not intended to be incorporated into the contract. Because the contract provision is subject to alternative reasonable interpretations and the interpretation of ambiguous provisions is a matter of fact,[12] *Commercial Union*, 412 Mass. at 557, 591 N.E.2d at 172, plaintiff's theory does not support a summary judgment on the contract claim.

Plaintiff's fourth, and final, theory for summary judgment on the contract claim is that Massachusetts law reads federal ERISA law into the contract, so that defendant had a fiduciary duty under ERISA. Plaintiff further argues that defendant breached its ERISA fiduciary duty and consequently breached the GICs. Plaintiff's theory is without merit. We do not believe defendant is a fiduciary under ERISA. However we need not reach this issue because ERISA preempts state law actions that are based on a violation of a fiduciary duty created by ERISA.

■ ERISA defines a fiduciary as follows:

[A] person is a fiduciary with respect to a plan to the extent ... he ... exercises any authority or control respecting management or disposition of its assets....

29 U.S.C. § 1002(21)(A). The GICs are assets of the plan, and plaintiff argues that

on November 8, 1991. Compl. ¶ 16(b)–(d); Answer ¶ 15.

12. Plaintiff asserts that any reasonable interpretation of the contract it proposes must be accepted by the Court because defendant drafted the contract and ambiguous terms in a contract are to be interpreted against the drafter. Pl's Br. in Supp. at 15. There are two reasons why we do not apply this general rule of construction to this case. First, defendant drafted the contract in accordance with plaintiff's written bid specifications. Gaffney Dep. at 47–48. Thus, it may not be appropriate to interpret every ambiguity against defendant. Further-

more the rule of construction that ambiguous provisions are construed against the drafter is only appropriate in cases where the parties are in markedly different bargaining positions. *RCI Northeast Services Div. v. Boston Edison Co.*, 637 F.Supp. 1178, 1179 (D.Mass.1986), *aff'r*, 822 F.2d 199 (1987). Since the parties in the case at bar are both sophisticated business entities, represented by competent counsels, the ambiguities in the contract are not construed against the drafter but create questions of fact which foreclose the possibility of summary judgment.

defendant's discretion to set the MVA formula gave it sufficient authority over the disposition of these plan assets to make it a pension plan fiduciary under ERISA. Plaintiff relies on *Chicago Bd. Options Exch., Inc. v. Connecticut Gen. Life Ins. Co.*, 713 F.2d 254 (7th Cir.1983), in which an insurance company and a pension plan entered into a contract which gave the insurance company the unilateral discretion to change the contract in such a way as to lock the plan into a low-yield investment for ten years. The Court found that the insurance company's discretion to change the contract unilaterally was not qualitatively different from the ability to choose plan investments, and thus the defendant could only exercise its discretion in light of ERISA's fiduciary obligations. *Id.* at 260. Plaintiff argues that defendant's discretion to set the MVA formula upon termination of the GICs gave it sufficient discretionary control over plan assets to create a fiduciary duty under ERISA.

However, in cases where a court has based an ERISA fiduciary duty on the power to alter an investment contract, the relevant contract allowed the contract seller, on its sole initiative, to alter the contract in a manner which would lessen its value to the plan. *See e.g., Id.; Associates in Adolescent Psychiatry v. Home Life Ins. Co.*, 941 F.2d 561, 564 (7th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1182, 117 L.Ed.2d 426 (1992) (contract gave the insurance company the right periodically and unilaterally to change the prospective interest rate); *Ed Miniat, Inc. v. Globe Life Ins. Group*, 805 F.2d 732, 734, 737–38 (7th Cir.1986), *cert. denied*, 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987) (contract gave insurance company the right unilaterally to lower the rate of return and increase the premium rate). However, the GICs in this case do not give defendant the right unilaterally to change the contracts to lessen their value to the plan. During the life of the contracts, defendant has no power to alter the GICs without plaintiff's written consent.[13] Defendant's discretion to set and calculate the MVA formula only arises after the plaintiff exercises its discretion to terminate the GIC. The Second Circuit has underscored that contracts must be viewed in their entirety in determining whether an insurance company's unilateral discretion is sufficient to create a fiduciary duty under ERISA. *Harris Trust*, 970 F.2d at 1145–46 (2d Cir.1992).[14] Since plaintiff's discretion to terminate the GIC triggers defendant's limited discretion to set the MVA formula, defendant's discretion merely offsets plaintiff's otherwise unrestrained power to terminate the GICs prematurely. We believe this limited discretion is not equivalent to the power to choose plan investments, as in *Chicago Bd.*, and under these circumstances, we do not believe defendant is an ERISA fiduciary.

However, we need not reach this difficult question to dispose of plaintiff's ERISA-based breach of contract theory. ERISA preempts state law claims that relate to an employee benefit plan. 29 U.S.C. § 1144(a). ERISA is the federal statutory scheme which regulates pension plans, 29 U.S.C. § 1001, and consequently all fiduciary duties created by ERISA relate to em-

---

**13.** If an insurance company enters into an investment contract with a pension plan which guarantees the level of benefit to the plan, the insurer has no fiduciary duty under ERISA. 29 U.S.C. § 1101(b)(2); *Harris Trust and Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 970 F.2d 1138, 1143 (2d Cir.1992). All the GIC's at issue guarantee the plan a fixed return over the life of the contract. Therefore, defendant is not a pension plan fiduciary under ERISA for its investment decisions during the life of the contract.

**14.** In *Harris Trust* the contract established a fund out of which the insurance company would finance guaranteed annuities for retiring plan beneficiaries. The company would also pay non-guaranteed benefits out of the fund to the extent that the fund balance exceeded 105% of the level necessary to provide for the insured benefits (free funds). The plan sued the insurance company for assuming an artificially low interest rate in determining the amount necessary to pay the guaranteed benefits and therefore limiting the level of free funds. The Court found that the company owed a fiduciary duty as to the free funds because the level of free funds was dependant on the performance of the insurance company's investments. However, the Court found that contract as a whole was not a plan asset to which the insurance company had a fiduciary duty. *Id.*

ployment benefit plans. Thus, ERISA preempts plaintiff's state law theory for breach of contract because the claim is based on a breach of duty created by ERISA. Therefore, even if ERISA creates a fiduciary duty for the defendant, ERISA also preempts any state law causes of action for a violation thereof.[15] Thus this theory does not support summary judgment for plaintiff on the contract claim.

In sum, both parties' motions for summary judgment on the contract claim are denied because they are either legally meritless or raise material issues of disputed fact.

## II. Defendant's Motion for Summary Judgment on Fraud and Negligent Misrepresentation Claims

■ Defendant's motion for summary judgment on fraud and negligent misrepresentation claims is granted because plaintiff did not rely on the alleged misstatements by defendant. Plaintiff must prove detrimental reliance on defendant's material misstatement to sustain an action for either fraud or negligent misrepresentation. *Robertson v. Gaston Snow & Ely Bartlett*, 404 Mass. 515, 536 N.E.2d 344, 349, *cert. denied*, 493 U.S. 894, 110 S.Ct. 242, 107 L.Ed.2d 192 (1989); *Zimmerman v. Kent*, 31 Mass.App.Ct. 72, 77, 575 N.E.2d 70, 74 (1991) (detrimental reliance an essential element of fraud). Plaintiff bases its claims on defendant's written statements of the original MVA formula in July and August of 1991. Pl's Br. in Opp. at 41. However the undisputed facts show that plaintiff did not rely on these statements in its decision to terminate the contracts.[16] Senior officials at State Street admitted that they would have terminated the GICs even if the MVAs had been as high as 10%. Gaffney Dep. at 141. This is confirmed by the fact that plaintiff could have withdrawn its termination of the GICs once MONY revealed that the revised MVA's would range from approximately 3.3% to

15. However plaintiff's state law claims that are not based on ERISA are not preempted. Although the scope of ERISA peremption is not well defined, the Second Circuit provides guidance for our analysis.

[L]aws that have been ruled preempted are those that provide an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them, or interfere with the calculation of benefits owed to an employee. Those that have not been preempted are laws of general application—often traditional exercises of state power or regulatory authority—whose effect on ERISA plans is incidental. *Aetna Life Ins. Co. v. Borges*, 869 F.2d 142, 146 (2d Cir.), *cert. denied*, 493 U.S. 811, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989). This action is not one by an employee to collect benefits nor does it affect how benefits are to be calculated. It is merely an action of generally applicable state contract law. This Court has found that ERISA does not preempt state law contracts that pension plans make with third parties to assist in the administration of the plan. *See National Health Plan Corp. v. Road Carriers Local 707, Welfare and Pension Fund*, 1991 WL 60391 (S.D.N.Y.1991) (Mukasey, D.J.). Furthermore, if state contract law were preempted in the case at hand, a large area of state law which is only tangentially related to pension funds would be federalized. Other courts have interpreted ERISA's preemption provision to avoid such a result. *See Vilas v. Lyons*, 702 F.Supp. 555, 563 (D.Md.1988) (no need for uniform federal law on contracts involving spousal waiver). Finally, in the cases cited by the parties in which an ERISA pension plan invests in an insurance contract which gives the insurance company sufficient discretion over plan assets to create a fiduciary duty, the Courts sustained the plan's right to sue on the contract under state law as well as for breach of ERISA's fiduciary duty. *See Chicago Board*, 713 F.2d at 256–58 (despite finding defendant an ERISA fiduciary, defendant's summary judgment on the state law contract claim was overturned); *Harris Trust*, 970 F.2d at 1146–48 (despite finding defendant an ERISA fiduciary, circuit court upheld district court's substantive dismissal of the state law contract claim). Therefore, we find that those state law claims that are not based on a violation of a duty created by ERISA are not preempted.

16. Plaintiff does not even claim that its decision to terminate the GICs was made in reliance on the alleged misstatements. Plaintiff supports its claims for fraud and negligent misrepresentation by asserting that defendant's misstatements induced it not to seek a preliminary injunction or declaratory relief to prevent defendant from applying the new MVA formula. Pl's Br. in Opp. at 41–42. We fail to see how such reliance worked to plaintiff's detriment. This Court has the power to remedy completely all of plaintiff's alleged injuries, and therefore even if plaintiff did not seek preliminary relief in reliance on defendant's alleged misstatements, this reliance did not work to plaintiff's detriment.

5.9%,[17] but State Street elected to continue with the terminations in full knowledge of the revised MVA formula. Gaffney Dep. at 96–97. Whether MONY applied the original or revised MVA formula to the canceled GICs did not affect plaintiff's decision to terminate the contracts. Therefore, plaintiff did not rely on the alleged misstatements, and the claims for fraud and negligent misrepresentation are dismissed.[18]

### III. The Cross Motions for Summary Judgment on the State Statutory Claims

The parties' cross motions for summary judgment for the claim under Massachusetts unfair business practice statute, Mass.Gen.L. ch. 93A § 11, are denied because plaintiff's motion is legally inadequate and defendant's motion raises an issue of fact. 93A § 11 creates a cause of action for any unfair or deceptive business practice. Plaintiff points out that a breach of fiduciary duty is sufficient to create liability under chapter 93A § 11. See Doliner v. Brown, 21 Mass.App.Ct. 692, 697, 489 N.E.2d 1036, 1040 (1986). Since plaintiff claims that defendant is an ERISA fiduciary and defendant violated that duty, it concludes that defendant is also liable under 93A § 11. As stated above we do not believe defendant is an ERISA fiduciary and, even if it is, ERISA preempts any state law remedy for violation of a duty created by ERISA. Supra at 921–23; 29 U.S.C. § 1144(a). Therefore, plaintiff's motion for summary judgment on the 93A § 11 claim is denied.

▮▮▮▮ Similarly defendant is not entitled to a summary judgment on the 93A § 11 claim. A trade practice is unfair if (1) it is within at least the penumbra of common law, statutory or other established concept of fairness; (2) it is immoral, unethical, oppressive or unscrupulous; and (3) it causes substantial injury to other businessmen. PMP Assoc., Inc. v. Globe Newspaper Co., 366 Mass. 593, 321 N.E.2d 915, 917 (1975) (adopting FTC's definition). If plaintiff successfully establishes that MONY breached the contract and intentionally misrepresented the MVA formula, a reasonable fact finder may conclude that defendant perpetrated an unfair business practice under 93A § 11. Heller Financial v. Insurance Co. of N. Am., 410 Mass. 400, 409, 573 N.E.2d 8, 13 (1991) (a misrepresentation is sufficient to support a 93A § 11 claim). Although plaintiff did not rely on any of the alleged misstatements by defendant, reliance is not required to show a violation of 93A § 11. Id.; Zayre Corp. v. Computer Sys. of Am., Inc., 24 Mass. App.Ct. 559, 511 N.E.2d 23, 30, review denied, 400 Mass. 1107, 513 N.E.2d 1289 (1987). The Massachusetts statute only requires that plaintiff show an unfair business practice which caused plaintiff damage. Plaintiff's allegations that defendant concealed its breach of contract until the eleventh hour is sufficient to support a claim for a violation of 93A § 11, and therefore defendant's motion for summary judgment on the claim is denied.[19]

---

**17.** It is not clear from the language of the contract whether State Street had the right to revoke its notice of termination once given, but a senior official at State Street believed she had the power to revoke termination. Gaffney Dep. at 93,156. In any case, in an October 18, 1991, letter MONY clearly gave State Street the option to revoke its notice of termination before withdrawal, Pl's Ex. A # 21, but State Street never exercised this option.

**18.** Plaintiff does not argue that it was fraudulently induced into purchasing the GIC's, and even if it had, plaintiff has not alleged facts which support such a claim. The MVA formula does not appear to have been primary focus of the GIC negotiations. Def's Rule g Statement ¶ 6; Pl's Rule g Statement ¶ 3. Before the GIC's

were consummated, two copies of the then-applicable, liability-based MVA formula were sent to plaintiff. Pl's Ex. A–2, A–3. In the cover letter to one of these correspondences, MONY indicated that the policy set forth therein was subject to change. Pl's Ex. A–3. We do not believe that these parol statements of MONY's then-applicable policy could have fraudulently mislead plaintiff, a sophisticated business entity, into the belief that MONY had committed not to change the MVA once the GIC's were signed. Thus, even had plaintiff argued that it was fraudulently induced into the contracts, such an argument would be rejected.

**19.** Plaintiff also makes a claim under Mass. Gen.L. ch. 175. § 181. However, the parties agree that this statute does not create a private

### IV. Defendant's Summary Judgment Motion on the Conversion Claim

Defendant moves for summary judgment on plaintiff's conversion claim on the grounds that a claim for conversion of money may not prevail unless the funds are kept in a separate identifiable fund. Def. Br. in Supp. at 45–46. Although it is unclear whether Massachusetts law only allows conversion actions for funds kept in a separate account, even if it does the funds under the GICs were sufficiently separate to support an action for conversion.

"Conversion requires the wrongful exercise of dominion over personality, including money, to which a plaintiff has an immediate right of possession." *Schmid v. National Bank of Greece, S.A.,* 622 F.Supp. 704, 713 (D.Mass.1985), *aff'r,* 802 F.2d 439 (1st Cir.1986). Defendant urges that we accept the majority rule that limits conversion actions for money to those instances where the funds converted are held in a separate identifiable account.[20] However, even if we apply such a limitation to the Massachusetts conversion action, plaintiff's claim is still sufficient. The GICs at issue provided that all plaintiff's contributions be held in a separate General Investment Accumulation Fund, Contracts 2.1, and, each contract's fund was sufficiently identifiable to support an action for conversion. The fact that the General Investment Accumulation Funds were part of defendant's general assets, Contracts 2.1, does not change our analy-sis. Bank deposits are part of a bank's general assets. Nonetheless an action against a bank for conversion is proper when an account identifies the funds of the plaintiff. *In Re 604 Columbus Ave. Realty Trust,* 968 F.2d 1332, 1358–59 (1st Cir. 1992). Consequently, defendant's motion for summary judgment on the conversion claim is denied.

### CONCLUSION

The parties' cross motions for summary judgment on the breach of contract and Massachusetts unfair business practice statute claims and defendant's motion for summary judgment on the conversion claim are denied because they are legally inadequate or because they raise disputed matters of fact. However, defendant's motion for summary judgment on the remainder of the state statutory claims, the fraud claim, and the negligent misrepresentation claim is granted.

SO ORDERED.

right of action. Def's Br. in Supp. at 43–44; Pl's Br. in Opp. at 43. Thus, this claim is dismissed. Additionally plaintiff makes claims under two New York statutes, N.Y.Gen.Bus. § 349; N.Y.Ins. § 4226(a)(1). However, the parties agree that Massachusetts law applies to this action, Def's Br. in Opp. at 44 n. 15, 52 n. 17, Pl's Br. in Opp. at 42–43, 45, and therefore, these claims are also dismissed.

**20.** Defendant cites cases where other states have enforced such a rule. *See e.g., Massive Paper Mills v. Two–Ten Corp.,* 669 F.Supp. 94, 96 (S.D.N.Y.1987); *Gillis v. Benefit Trust Life Ins. Co.,* 601 So.2d 951, 952 (Ala.1992); *Reason v. Payne,* 793 S.W.2d 471, 474 (Mo.Ct.App.1990); *Richardson's Restaurants, Inc. v. National Bank of South Carolina,* 304 S.C. 289, 403 S.E.2d 669, 672 (Ct.App.1991); *Dixon v. State,* 808 S.W.2d 721, 723 (Tx.Ct.App.1991). The only Massachusetts authority for the proposition is *Massachusetts Bonding & Ins. Co. v. Lineberry,* 320 Mass. 510, 70 N.E.2d 308 (1946), which held when an agreement between parties allows the defendant to commingle money he holds for the plaintiff with his own funds, the defendant's refusal or failure to pay the money does not constitute conversion. *Id.* at 309–310.