James R. FERRY, James W. Gloekle, John F. McIntyre, Herbert T. Miller, Jr., James D. Miller, and Alfred G. Staudt, Trustees of the Western Pennsylvania Electrical Employees Deferred Compensation Fund, Pittsburgh, Pennsylvania, and Central Mutual Insurance Company, on its own behalf and as Plan Fiduciary for The Group Pension Plan for Employees of Central Mutual Insurance Company, Plaintiffs,

v.

MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Defendant.

Civ. A. No. 93–709.

United States District Court, W.D. Pennsylvania.

Feb. 14, 1994.

William Campbell Ries, George E. McGrann, Dickie, McCamey & Chilcote, Pittsburgh, PA, for plaintiffs.

Dale Hershey, Amy J. Greer, Eckert, Seamans, Cherin & Mellott, Pittsburgh, PA, Charles A. Reid, III, Shanley & Fisher, Morristown, NJ, for defendant.

## MEMORANDUM OPINION

BLOCH, District Judge.

Presently before this Court is defendant's motion to dismiss. For the reasons stated herein, defendant's motion will be granted in part and denied in part.

### I. Background

■ On May 7, 1993, plaintiffs James Ferry, James Gloekler, John McIntyre, Herbert Miller, Jr., James Miller, and Alfred Staudt, as trustees of the Western Pennsylvania Electrical Employees Deferred Compensation Fund (the WPEE Plan and collectively the WPEE Plaintiffs), as well as plaintiff Central Mutual Insurance Company (CMIC), on its own behalf and as plan fiduciary for the Group Pension Plan for Employees of CMIC (the CMIC Plan), filed a 21-count complaint against Mutual Life Insurance Company of New York (MONY).[1] In their complaint, plaintiffs assert five categories of claims: (1) federal statutory claims under ERISA; (2) claims under the federal securities laws; (3) claims under Pennsylvania and Ohio securities laws; (4) claims for "bad faith" under Pennsylvania and Ohio law; and (5) federal common law claims under ERISA.[2]

---

1. The parties do not dispute that the WPEE Plan and the CMIC Plan are employee benefit plans governed by the Employee Retirement Income Security Act of 1974, as amended (ERISA), 29 U.S.C. §§ 1001–1461 (1985 and Supp.1993).

2. Plaintiffs do not specify the subsections of ERISA § 502(a) upon which they rely. It is apparent, however, based upon the nature of their claims that they are proceeding under § 502(a)(2) for purposes of their breach of fiduciary duty claims and § 502(a)(3)(B) for purposes of their federal common law claims. A pension fund or trustee of a fund cannot sue under ERISA § 502(a)(1)(B) on behalf of participants or beneficiaries. *Allstate Insurance Co. v. 65 Security Plan*, 879 F.2d 90, 94 (3d Cir.1989) (*citing Northeast Department ILGWU v. Teamsters Local Union No. 229*, 764 F.2d 147, 153 (3d Cir.1985)). Section 502(a) provides in relevant part:

> A civil action may be brought— ...
> (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 409;

This case arises out of the plaintiffs' purchase of several "guaranteed investment contracts" (GIC contracts) from defendant MONY.[3] The WPEE Plaintiffs purchased two GIC contracts from MONY, while plaintiff CMIC purchased four of these contracts. Each of the GIC contracts contained an annuity purchase option under which the plan could purchase an annuity to fund benefits for a plan participant who retired during the term of the contract.

Under the terms of the GIC contracts, the purchaser deposits a sum of money with the issuer. "The issuer then guarantees the return of the principal at the end of the term of the GIC and guarantees the payment of a guaranteed rate of return on the sum deposited." (Complaint at ¶ 26). Each of the GIC contracts purchased by plaintiffs had terms of either five or six years. Moreover, each of the GIC contracts provided for a "divisible surplus" credit.[4]

Plaintiffs allege that, after they purchased the GIC contracts, defendant began to suffer financial difficulties. Based upon the financial distress of defendant, plaintiffs decided to liquidate their investments under the GIC contracts. A provision in each of the GIC contracts stated that MONY had the right to withdraw certain amounts based upon a Market Value Adjustment (MVA) and an additional amount to · obtain unrecovered expenses. The objective of the MVA is generally described in the contract, but the precise derivation of the adjustment is allegedly determined by MONY. Defendant's computation of the MVA as well as the plaintiffs' entitlement to any divisible surplus credits are the gravamen of this lawsuit. According to plaintiffs, MONY "devised and concocted new methods of applying a [MVA] formula to be used in the event of early withdrawals by GIC holders." (Complaint at ¶ 55).

Defendant filed the instant motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b). In its motion to dismiss, defendant seeks dismissal of the following claims: (1) plaintiffs' claims under ERISA for breach of fiduciary duties and engaging in prohibited transactions (Counts I–IV); (2) plaintiffs' claims for violations of federal and state securities laws (Counts V–XI); (3) plaintiffs'

---

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan; . . . .

ERISA § 502(a), 29 U.S.C. § 1132(a). Section 409(a), in turn, provides:

Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

ERISA § 409(a), 29 U.S.C. § 1109(a).

3. All parties use the term GIC contracts. To the defendant, however, GIC stands for "guaranteed interest contracts." (Defendant's brief at 1). The contracts themselves are labeled either "group annuity contract" or "deposit administration group annuity contract." Professor McGill, a recognized expert in the field, describes GIC contracts as follows:

As one facet of its asset management services, the insurer may accept a block of funds and guaranty a rate of return reflective of the yields currently available on the type and quality of assets required with the funds. Contracts containing such an interest guaranty have various appellations, depending on the insurer, but they tend to be known under the generic name of "guaranteed income contract," or GIC.

Dan M. McGill and Donald S. Grubbs, Jr., *Fundamentals of Private Pensions*, 497 (6th ed. 1989). Professor McGill's book has been cited by the federal courts as a useful reference in similar cases. *John Hancock Mutual Life Insurance Co. v. Harris Trust and Savings Bank*, —— U.S. ——, —— n. 2, 114 S.Ct. 517, 521 n. 2, 126 L.Ed.2d 524 (1993); *Mack Boring and Parts v. Meeker Sharkey Moffitt*, 930 F.2d 267, 269 (3d Cir.1991) (*citing* 5th ed.). Based upon the record before the Court, it appears to be undisputed that the GIC contracts are a variation of deposit administration contracts. *See* McGill and Grubbs, *supra*, at 551. Defendant MONY contends that "[i]n all material respects" the GIC contracts purchased by plaintiffs are "identical to the DA [deposit administration] Contract involved in *Mack Boring*." (Defendant's brief at 20).

4. The defendant disputes whether plaintiffs are entitled to any "divisible surplus" credit in this case. The contracts do not define "divisible surplus" and none of the parties have proffered a definition.

claims for "tortious breach of contract/bad faith" (Counts XII and XIII); (4) plaintiffs' claims for "fraud/misrepresentation" (Counts XIV and XV); (5) plaintiffs' claims for breach of fiduciary duty (Counts XVI and XVII); (6) plaintiffs' claims for unjust enrichment (Counts XVIII and XIX); and (7) plaintiffs' claims for conversion (Counts XX and XXI).

First, defendant asserts that it is not a fiduciary because it did not exercise control respecting management of "plan assets" and, therefore, plaintiffs' claims set forth in Counts I through IV must be dismissed. Second, defendant argues that plaintiffs' claims set forth in Counts XII through XXI are preempted by ERISA and that plaintiffs' claims are not cognizable under federal common law. Finally, defendant contends that if plaintiffs' fraud claims set forth in Counts XIV and XV are cognizable, they fail to satisfy the particularity requirements of Fed. R.Civ.P. 9(b). Plaintiffs respond that defendant does qualify as a fiduciary under ERISA and that their claims should be recognized under federal common law.

## II. Discussion

In ruling on a motion to dismiss, the applicable standard of review requires the Court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party. *Blaw Knox Retirement Income Plan v. White Consolidated Industries, Inc.*, 998 F.2d 1185, 1188 (3d Cir.1993). The question before the Court is whether the plaintiffs can prove any set of facts in support of their claims that will entitle them to relief, not whether they will ultimately prevail. *Hishon v. King and Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984).

Before resolving the central issues involved in this motion, two preliminary matters must be addressed. First, plaintiffs have withdrawn their claims under federal and state securities laws citing the Supreme Court's holding in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). Therefore, plaintiffs' claims set forth in Counts V through XI will be dismissed. Second, plaintiffs concede that their claims, except for their claims for "bad faith" set forth in Counts XII and XIII, are preempted by ERISA and, therefore, are pled solely as federal common law claims.

### A. Fiduciary status of MONY

Under ERISA, the definition of "employee benefit plan" includes both "employee welfare benefit plan" and "employee pension benefit plan." ERISA § 3(3), 29 U.S.C. § 1002(3). A person is a fiduciary with respect to an employee benefit plan "to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises *any authority or control respecting management or disposition of its assets . . . .*" ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). Although the term "plan assets" is not defined in the statute, ERISA § 401(b)(2) provides an exclusion from plan assets treatment for insurance company assets maintained in connection with a "guaranteed benefit policy."

> In the case of a plan to which a *guaranteed benefit policy* is issued by an insurer, the *assets of such plan* shall be deemed to *include such policy,* but shall not, solely by reason of the issuance of such policy, be deemed to include any assets of such insurer.
>
> \* \* \* \* \* \*
>
> (B) The term "guaranteed benefit policy" means an insurance policy or *contract to the extent that such policy or contract provides for benefits the amount of which is guaranteed by the insurer.* Such term includes any surplus in a separate account, but excludes any other portion of a separate account.

ERISA § 401(b)(2), 29 U.S.C. § 1101(b)(2).

Plaintiffs contend that MONY is a fiduciary because (1) it exercises authority or control respecting management of plan assets pursuant to the GIC contracts and (2) it exercises control with respect to the terms of the GIC contracts themselves. Defendant responds that the assets held pursuant to the GIC contracts fall within the guaranteed benefit policy exclusion. Defendant further argues that it is not a fiduciary with respect to

the GIC contracts themselves because it did not have discretionary authority to change the terms of the contract.

The Supreme Court recently considered the application of the guaranteed benefit policy exclusion in ERISA § 401(b)(2) to group annuity contracts such as deposit administration or participating group annuity contracts. In *John Hancock Mutual Life Insurance Co. v. Harris Trust and Savings Bank,* — U.S. —, 114 S.Ct. 517, 126 L.Ed.2d 524 (1993), the Court visited this important corner of ERISA in order to resolve a split among the Courts of Appeals. *Cf. Harris Trust,* 970 F.2d 1138 (2d Cir.1992) *and Peoria Union Stock Yards Company Retirement Plan v. Penn Mutual Life Insurance Co.,* 698 F.2d 320 (7th Cir.1983), *with Mack Boring and Parts v. Meeker Sharkey Moffitt,* 930 F.2d 267 (3d Cir.1991).

In *Harris Trust,* the Supreme Court examined a contract "known in the trade as a 'deposit administration contract' or 'participating group annuity.'" *Harris Trust,* — U.S. at —, 114 S.Ct. at 521. The Court explained the operation of this type of contract as follows:

> Under a contract of this type, deposits to secure retiree benefits are not immediately applied to the purchase of annuities; instead, the deposits are commingled with the insurer's general corporate assets, and deposit account balances reflect the insurer's overall investment experience. During the life of the contract, however, amounts credited to the deposit account may be converted into a stream of guaranteed benefits for individual retirees.

*Id.*

Concluding that funds held in an insurance company's general account pursuant to a deposit administration contract may qualify as plan assets subjecting the holder to "ERISA's fiduciary regime," the Supreme Court eschewed the approach adopted by the Court of Appeals for the Third Circuit and sanctioned the two-phase approach developed by the Court of Appeals for the Seventh Circuit. *Harris Trust,* — U.S. at —, 114 S.Ct. at 526–27. Following "the Seventh Circuit's lead," the Supreme Court explained that the Seventh Circuit's approach calling

for the "division of the contract into its component parts and examination of risk allocation in each component—appears well-suited to the matter at hand because ERISA instructs that the § 1101(b)(2)(B) exemption applies only '*to the extent that*' a policy or contract provides for 'benefits *the amount of which is guaranteed.*'" *Id.* (emphasis in original).

The Court explained that "[d]uring the contract's active, accumulation phase, any benefits payable by Hancock for which entries have been made in the Liabilities of the Fund fit squarely within the 'guaranteed' category." *Id.* at — — —, 114 S.Ct. at 527–28.

The Court then turned to the "nub of the controversy" and addressed whether Hancock was a fiduciary with respect to the "free funds," which it defined as the "funds in excess of those that have been converted into guaranteed benefits." *Id.* The Court concluded:

> In sum, we hold that to determine whether a contract qualifies as a guaranteed benefit policy, each component of the contract bears examination. A component fits within the guaranteed policy exclusion only if it allocates investment risk to the insurer. Such an allocation is present when the insurer provides a genuine guarantee of an aggregate amount of benefits payable to retirement plan participants and their beneficiaries. As to a contract's "free funds"—funds in excess of those that have been converted into guaranteed benefits—these indicators are key: the insurer's guarantee of a reasonable rate of return on those funds and the provision of a mechanism to convert the funds into guaranteed benefits at rates set by the contract.

*Id.*

In reaching its holding that the free funds were plan assets, the Supreme Court rejected the insurance company's argument that the full extent of the contract "provides for" benefits because Harris Trust had "the right ... to use any 'free funds' to purchase future guaranteed benefits under the contract, in

addition to benefits previously guaranteed." *Id. (citing Mack Boring,* 930 F.2d ·at 273).[5]

The Court explained that "[a] contract component that provides for something other than guaranteed payments to plan participants or beneficiaries—*e.g.,* a guaranteed return to the plan—does not, without more, provide for guaranteed *benefits* and thus does not fall within the statutory exclusion." *Id.* —— U.S. at ——, 114 S.Ct. at 529 (emphasis in original).

▆▆▆▆ Although the GIC contracts issued by MONY may meet the requirements set forth by the Supreme Court in *Harris Trust,* this Court will not dismiss plaintiffs' ERISA claims at this stage.[6] Assuming the truth of the allegations in the complaint and drawing all inferences in their favor, plaintiffs may be able to prove a set of facts entitling them to relief.[7] Specifically, plaintiffs may demonstrate that the MVA or the divisible surplus credit contained in the GIC contracts operated in such a manner that the amount of *benefits* was not guaranteed under these contracts. In addition, if the GIC contracts issued by MONY do qualify for the guaran-

teed benefit policy exclusion, plaintiffs have stated a claim under ERISA because the contracts themselves are deemed by ERISA § 401(b)(2) to be plan assets, and plaintiffs have alleged that defendant MONY exercised discretionary control over the calculation of the MVA and the divisible surplus credit. *See Mack Boring,* 930 F.2d at 277 n. 20 ("[T]he 'assets' of the Plan were the contract itself, and the bundle of rights associated with the contract. Presumably, then, if Provident had breached any provision in the contract, Mack would not only have an action for breach of contract, but would also have an action for breach of ERISA fiduciary duties."). Therefore, defendant's motion to dismiss Counts I and II will be denied.

## B. *"Bad faith" claims under state law*

▆▆▆▆ Plaintiffs concede that their claims for fraud, breach of fiduciary duty, unjust enrichment and conversion can arise only under federal common law based upon the broad sweep of ERISA preemption. (Plaintiffs' brief at 26). Plaintiffs, however, assert

---

5. The Court of Appeals for the Third Circuit had previously interpreted the term "provides" in ERISA § 401(b)(2)(B) as meaning "to 'make, procure, or furnish for future use, prepare....'" *Mack Boring,* 930 F.2d at 273 (*quoting Black's Law Dictionary* (5th ed. 1979)). The dissent in *Harris Trust* cited the same broad definition as the Third Circuit. *Harris Trust,* —— U.S. at ——, 114 S.Ct. at 531–33 (Thomas, J., dissenting joined by Justices O'Connor and Kennedy). The majority, however, held that the term was limited by the "to the extent" language which precedes "provides" in ERISA § 401(b)(2)(B). *Id.* at ——, 114 S.Ct. at 527–28. According to the dissent, the majority took "'provides for' to mean that the contract must currently guarantee the amounts to be disbursed in future payments." *Id.* at ——, 114 S.Ct. at 532.

6. Defendant directs this Court's attention to *State Street Bank & Trust Co. v. Mutual Life Insurance Company of New York,* 811 F.Supp. 915 (S.D.N.Y.1993), in support of its motion to dismiss because that case involved similar GIC contracts issued by MONY. The district court in *State Street* determined that, under the Second Circuit's decision in *Harris Trust,* "[i]f an insurance company enters into an investment contract with a pension plan which guarantees the level of benefit to the plan, the insurer has no fiduciary duty under ERISA. All GIC's at issue guarantee the plan a fixed return over the life of the contract. Therefore, defendant is not a pension plan fiduciary under ERISA for its investment deci-

sions during the life of the contract." *State Street,* 811 F.Supp. at 922 n. 13 (citations omitted). Putting aside the Supreme Court's subsequent interpretation of the guaranteed benefit policy exemption, this Court notes that the *State Street* decision was rendered at the summary judgment stage after the record had been more fully developed. Similarly, the Court notes that the district court in *Harris Trust* resolved this issue at the summary judgment stage. *Harris Trust,* 722 F.Supp. 998 (S.D.N.Y.1989), *rev'd. in part,* 970 F.2d 1138 (2d Cir.1992), *aff'd.,* —— U.S. ——, 114 S.Ct. 517, 126 L.Ed.2d 524 (1993).

7. Defendant's argument that this Court "must find that [it] is not subject to ERISA's prohibited transaction provisions and must dismiss [Counts III and IV]" based upon the Department of Labor's Interpretative Bulletin 75–2 does not require extensive treatment. In *Harris Trust,* both the majority and the dissent found that Interpretative Bulletin 75–2, 40 Fed.Reg. 31,598 (1975), 29 C.F.R. § 2509.75–2(b) (1992), was not entitled to the deference accorded to the agency rulings under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984). *Harris Trust,* —— U.S. at ——, —— n. 5, 114 S.Ct. at 529–31, 535 n. 5. Accordingly, defendant's motion to dismiss Count III and IV will be denied.

that their claims for "bad faith" under 42 Pa.C.S.A. § 8371 and Ohio common law are "saved" from ERISA preemption because these claims arise under laws that regulate the insurance industry.[8] Therefore, before discussing whether plaintiffs have stated claims under federal common law, a brief discussion of ERISA preemption is necessary to determine whether plaintiffs may assert these "bad faith" claims under state law.

■ Preemption of certain state laws is based upon three provisions of ERISA:

Except as provided in subsection (b) of this section [the saving clause], the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan.... ERISA § 514(a), 29 U.S.C. § 1144(a) (preemption clause).

Except as provided in subparagraph (B) [the deemer clause], nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities. ERISA § 514(b)(2)(A), 29 U.S.C. § 1144(b)(2)(A) (saving clause).

Neither an employee benefit plan ... nor any trust established under such plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies. ERISA § 514(b)(2)(B), 29 U.S.C. § 1144(b)(2)(B) (deemer clause).

The Supreme Court succinctly stated the operation of these provisions in *Pilot Life*

*Insurance Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987):

If a state law "relate[s] to ... employee benefit plan[s]," it is preempted. § 514(a). The saving clause excepts from the preemption clause laws that "regulat[e] insurance." § 514(b)(2)(A). The deemer clause makes clear that a state law that "purport[s] to regulate insurance" cannot deem an employee benefit plan to be an insurance company. § 514(b)(2)(B).

*Pilot Life*, 481 U.S. at 45, 107 S.Ct. at 1552. These provisions are "deliberately expansive" and "designed to 'establish pension plan regulation as exclusively a federal concern.'" *Pilot Life*, 481 U.S. at 46, 107 S.Ct. at 1552 (*quoting Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981)).

■ "A law 'relate[s] to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983); *Pane v. RCA Corp.*, 868 F.2d 631, 635 (3d Cir.1989). State laws "have a 'connection' to an ERISA plan when the laws risk subjecting plan administrators to conflicting state regulations." *Travitz v. Northeast Department ILGWU Health and Welfare Fund*, 13 F.3d 704, 709 (3d Cir.1994). Plaintiffs do not dispute that their claims under § 8371 relate to employee benefit plans. Therefore, the claims authorized under § 8371 are preempted unless the saving clause excepts them from the reach of the preemption clause.

The Supreme Court has explained that in determining whether "a state law falls under the saving clause," courts should examine the case law interpreting the phrase "business of insurance" under the McCarran–Ferguson

8. Section 8371, which was enacted in 1990, provides as follows:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in the amount equal to the prime rate of interest plus three percent.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S.A. § 8371 (Supp.1992). Plaintiffs' claims in Counts XII and XIII are labeled "tortious breach of contract/bad faith." For clarity, the Court will address plaintiffs' claims for "bad faith" and "tortious breach of contract" separately because these claims are asserted respectively under state and federal law.

Act, 15 U.S.C. § 1011–1015 (1976 and Supp. 1993). *Pilot Life*, 481 U.S. at 48, 107 S.Ct. at 1553.[9] Thus, this Court must determine whether § 8371, the Pennsylvania statutory cause of action against insurance companies acting in bad faith, satisfies the following criteria:

> "*[F]irst,* whether the practice has the effect of transferring or spreading a policyholder's risk; *second,* whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third,* whether the practice is limited to entities within the insurance industry."

*Pilot Life,* 481 U.S. at 48–49, 107 S.Ct. at 1553 (citation omitted).

Courts previously considering whether ERISA preempts § 8371 have held that while this law is limited to entities within the insurance industry, it fails to spread the policyholder's risk and is not an integral part of the policy relationship. *Booz v. Unum Life Insurance Co. of America,* No. 93–2326, 1993 WL 313372, at *1–2 and n. 1 (E.D.Pa. July 29, 1993) (Newcomer, J.); *Gelzinis v. John Hancock Mutual Life Insurance Co.,* No. 93–569, 1993 WL 131566, at *4–5 (E.D.Pa. April 27, 1993) (Hutton, J.); *Northwestern Institute of Psychiatry v. Travelers Insurance Co.,* No. 92–1520, 1992 WL 331521, at *3 (E.D.Pa. Nov. 3, 1992). This Court agrees with the reasoning and analysis of these cases.[10]

Thus, this Court finds that plaintiffs' claims for "bad faith" based upon § 8371 are not excepted from preemption by the saving provision. In addition, the Court finds plaintiffs' arguments with respect to their "bad faith" claims under Ohio law similarly unavailing. Assuming *arguendo* that "bad faith" claims under Ohio law are directed specifically toward the insurance industry, they still fail to satisfy the remaining two criteria set forth in *Pilot Life.* Accordingly, plaintiffs' claims for "bad faith" set forth in Counts XII and XIII will be dismissed.

### C. Claims under federal common law

Plaintiffs contend that this Court should recognize claims for "tortious breach of contract," "fraud/misrepresentation," breach of fiduciary duty, unjust enrichment and conversion under federal common law. Defendant responds that none of these causes of action are cognizable under federal common law because ERISA provides a remedy for the alleged wrongs. Specifically, defendant contends that plaintiffs may assert "equitable, federal common-law breach of contract claim[s] for restitution." (Defendant's reply brief at 32).

It is well-settled that Congress has authorized federal courts to develop common law under ERISA. *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 110, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989); *Plucinski v. I.A.M. National Pension Fund,* 875 F.2d 1052, 1056 (3d Cir.1989); *Van Orman v. American Insurance Co.,* 680 F.2d 301, 311 (3d Cir.1982).

In *Massachusetts Mutual Life Insurance Co. v. Russell,* 473 U.S. 134, 146, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985), however, the Supreme Court explained:

> The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted ... provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly. The assumption of inadvertent omission is rendered especially suspect upon close consideration of ERISA's interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a "comprehensive and reticulated statute."

*Id.* (emphasis in original).

In his concurrence, Justice Brennan criticized these "remarks about the constrictive judicial role in enforcing ERISA's remedial

---

**9.** The saving clause covers "any law of any State." For purposes of § 514, " '[t]he term "State law" includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State.' " *Pilot Life,* 481 U.S. at 48 n. 1, 107 S.Ct. at 1553 n. 1 (*quoting* 29 U.S.C. §§ 1144(c)(1) and (2)).

**10.** Plaintiffs' arguments to the contrary are not persuasive. Plaintiffs merely cite the *Pilot Life* criteria generally without addressing any of the subsequent decisions directly addressing the application of these factors to § 8371 claims.

scheme." *Russell,* 473 U.S. at 155, 105 S.Ct. at 3097. Justice Brennan, joined by Justices White, Marshall and Blackman, concluded that "ERISA was not so 'carefully integrated' and 'crafted' as to preclude further judicial delineation of appropriate rights and remedies; far from barring such a process, the statute explicitly directs that courts shall undertake it." *Id.* at 157, 105 S.Ct. at 3098. Despite Justice Brennan's criticism, however, the Supreme Court has repeatedly suggested that federal courts exercise restraint in developing federal common law under ERISA. *Mertens v. Hewitt Associates,* —— U.S. ——, ——, 113 S.Ct. 2063, 2068–70, 124 L.Ed.2d 161 (1993) (stating that the Court "emphasized" in *Russell* its "unwillingness to infer causes of action in the ERISA context, since that statute's carefully crafted and detailed enforcement scheme provides 'strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly' "); *Pilot Life,* 481 U.S. at 54, 107 S.Ct. at 1556 (stating that "[t]he deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive"). *See also Hozier v. Midwest Fasteners, Inc.,* 908 F.2d 1155, 1168–70 (3d Cir.1990) (applying restrictive interpretation of § 502(a) set forth in *Russell* and *Pilot Life* ); *McLaughlin v. Compton,* 834 F.Supp. 743, 747 (E.D.Pa.1993) (stating that the Supreme Court in *Mertens* "forcefully reiterated earlier directives to strictly construe the statute").

Notably, however, the Court of Appeals for the Third Circuit recently adopted "the approach of Justice Brennan's concurrence" in *Russell* and held that " '§ 502(a)(3) authorizes the award of "appropriate equitable relief" directly to a participant or beneficiary to "redress" "*any* act or practice which violates *any* provision of this title" ' including a breach of the statutorily created fiduciary duty of an administrator." *Bixler v. Central Pennsylvania Teamsters Health & Welfare Fund,* 12 F.3d 1292, 1298 (3d Cir.1993) (emphasis in original). Without discussing *Mer-*

tens or the other decisions suggesting that ERISA should be strictly construed, the Court of Appeals for the Third Circuit found "Justice Brennan's analysis [in *Russell* ] to be persuasive" because it addressed "the structure, legislative history, and purposes of ERISA." *Id.* 12 F.3d at 1299–1300.

By adopting Justice Brennan's approach, the Court of Appeals in *Bixler* appears to depart from the Supreme Court's prior admonitions. Despite this apparent departure, however, *Bixler* is reconcilable with the line of cases adopting a "constrictive" judicial role. In *Bixler,* the Third Circuit explained that "ERISA's fiduciary duty section [§ 404(a) ] incorporates the common law of trusts." *Id.* Examining the common law of trusts, the Court of Appeals found it to be "black-letter trust law" that fiduciary duties run "directly to beneficiaries in the administration and payment of trust benefits." *Id.* Thus, the Court in *Bixler* merely recognized a cause of action that was established under the common law of trusts and incorporated into ERISA.

In earlier decisions, the Court of Appeals for the Third Circuit framed the issue as whether the "[j]udicial creation of a right in such circumstances" is " 'necessary to fill in interstitially or otherwise effectuate the statutory pattern enacted in the large by Congress.' " *Van Orman,* 680 F.2d at 312 (citation omitted). The Court of Appeals further recognized "that Congress has established through ERISA 'an extensive regulatory network,' and that 'federal courts [should] not lightly create additional [ERISA] rights under the rebuke of federal common law.' " *Plucinski,* 875 F.2d at 1056 (*quoting Van Orman,* 680 F.2d at 312).

Guided by these principles, the Court will address plaintiffs' specific claims for relief under federal common law.

*1. Claims for "tortious breach of contract"*

■■■ Plaintiffs assert that their claims for "tortious breach of contract" should be recognized as federal common law based upon § 205 of the Restatement (Second) of Contracts.[11] In the alternative, plaintiffs argue

---

11. Section 205 provides that "[e]very contract

imposes upon each party a duty of good faith and

774

that they have stated a claim for breach of contract.

A review of the complaint and plaintiffs' brief reveals that they are asserting their "tortious breach of contract" claims under federal common law in an effort to demand punitive damages. (*See* complaint at Counts XII and XIII; plaintiffs' brief at 38 n. 14).

Recently, the Supreme Court explained the meaning of the phrase "other appropriate equitable relief" contained in ERISA § 502(a)(3)(B). *Mertens*, — U.S. at —, 113 S.Ct. at 2067–68. The Court found that the remedies under § 502(a)(3)(B) are limited to traditional equitable remedies, such as injunction and restitution, and do not include compensatory damages, which are "the classic form of *legal* relief." *Id.* at —, 113 S.Ct. at 2067–68. *See also Anweiler v. American Elec. Power Serv. Corp.*, 3 F.3d 986, 993 (7th Cir.1993) ("In *Mertens*, the Court held that the 'appropriate equitable relief' in § 1132(a)(3) included only typical remedies available in equity and not 'legal remedies' like compensatory or monetary relief."); *Kuhl v. Lincoln National Health Plan of Kansas City, Inc.*, 999 F.2d 298, 304–05 (8th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994) (noting that its interpretation of § 502(a)(3)(B) precluding award of monetary damages had been "recently vindicated by the Supreme Court" in *Mertens* ); *Pitts v. American Nat. Ins. Co.*, 836 F.Supp. 1280, 1290 (S.D.Miss. 1993) ("The Supreme Court has held [in *Mertens* ] that 'other appropriate equitable relief' includes neither compensatory nor punitive damages."); *McLaughlin*, 834 F.Supp. at 747 (finding that Court · in *Mertens* held that " 'equitable relief' authorized [in § 502(a)(3)(B) ] ... did not include monetary relief.").

The Court of Appeals for the Third Circuit had previously determined that "[p]unitive damages are not available" under § 502(a). *Pane v. RCA Corp.*, 868 F.2d at 635 n. 2. The Court of Appeals reasoned in *Pane* that "§ 502(a) of ERISA, 29 U.S.C. § 1132(a),

does not authorize such relief." *Id.* (citations omitted).

Thus, because these claims would be duplicative of their breach of contract claims under *Mack Boring* absent the availability of punitive damages, this Court will not recognize the plaintiffs' claims for "tortious breach of contract." Accordingly, plaintiffs' claims for "tortious breach of contract" set forth in Counts XII and XIII will be dismissed.

### 2. *Claims for "fraud/misrepresentation"*

■ Plaintiffs contend that they have stated claims for fraud under *Carl Colteryahn Dairy, Inc. v. Teamsters and Employers Pension Fund,* 847 F.2d 113 (3d Cir. 1988), *cert. denied,* 488 U.S. 1041, 109 S.Ct. 865, 102 L.Ed.2d 989 (1989). Defendant responds that *Colteryahn* is limited to its facts because it involved an action under the Multi–Employer Pension Plan Amendments Act (MPPAA), 29 U.S.C. §§ 1381–1453 (1982). In addition, defendant argues that if plaintiffs' fraud claims are cognizable under federal common law, they have failed to satisfy Fed.R.Civ.P. 9(b).

In *Colteryahn,* the Court of Appeals for the Third Circuit held that a defrauded employer may sue "for the return of any withdrawal liability sums that were assessed as a result of a fraudulent inducement to join" the defendant multi-employer fund. *Id.* at 122. The Court in *Colteryahn* determined that unless it created a federal common law claim for fraud, the employer lacked any remedy. *Id.* at 121 (stating "we doubt that Congress intended that innocent employers, penalized by the fraudulent exercise of such powers, would be without remedy"). The Court of Appeals reasoned that a fraud cause of action under the federal common law would operate as a safeguard against the multi-employer funds' "immense ... power to assess upon a withdrawing employer a substantial penalty." *Id.* at 121.

Defendant argues that the fraud claim recognized in *Colteryahn* may only be asserted

fair dealing in its performance and its enforcement." Restatement (Second) of Contracts

§ 205 (1981).

in an action arising under 29 U.S.C. § 1451.[12] The policy and the rationale articulated by the Court in *Colteryahn* do not, however, extend only to multi-employer funds. First, the Third Circuit specifically referred to § 2 of ERISA for the statute's policy and emphasized the "particularly apposite" rule that "a party should not be allowed to profit from its own wrongs." *Colteryahn*, 847 F.2d at 121. Second, the fact that jurisdiction in *Colteryahn* was based upon § 1451 does not preclude the application of the *Colteryahn* rationale in the present case.[13] Finally, the policies underlying ERISA support a fraud cause of action in this case. Recognizing a fraud claim in favor of the plaintiffs will serve to protect the employee benefit funds and, therefore, further the goal of protecting the participants' interests.

Defendant further argues that "no basis exists for recognizing a separate federal common-law fraud claim" because, it asserts, plaintiffs "may assert an equitable, federal common-law breach of contract claim for restitution." (Defendant's reply brief at 32). Assuming the truth of their allegations and drawing all inferences in their favor, it is entirely possible that plaintiffs may prove a set of facts which would constitute fraud and which would not be a breach of the contracts.[14] Thus, this Court believes that the *Colteryahn* decision requires recognition of the plaintiffs' fraud claims.

■ This Court, however, must further determine whether plaintiffs' fraud claims, although legally cognizable, nevertheless fail to satisfy the particularity requirements of Fed.R.Civ.P. 9(b). Rule 9(b) provides in relevant part: "In all averments of fraud or mistake, the circumstances of fraud or mistake shall be stated with particularity." Fed. R.Civ.P. 9(b). In *Christidis v. First Pennsylvania Mortgage Trust*, 717 F.2d 96, 99–100 (3d Cir.1983), the Court of Appeals for the Third Circuit explained that "[i]n applying the first sentence of Rule 9(b) courts must be sensitive to the fact that its application, prior to discovery, may permit sophisticated defrauders to successfully conceal the details of their fraud." The Court further stated that "in applying the rule, focusing exclusively on its 'particularity' language 'is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules.'" *Id.* at 100 (*quoting* 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1298, at 407 (1969)). Subsequently, in *Seville Industrial Machinery v. Southmost Machinery*, 742 F.2d 786, 791 (3d Cir.1984), the Third Circuit further described the scrutiny to be applied to allegations of fraud. The Court stated that "[i]t is certainly true that allegations of 'date, place or time' fulfill these functions, but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Id.* Applying this standard, the Court of Appeals found that the complaint "adequately describe[d] the nature and subject of the alleged misrepresentation." *Id.* As an example of a sufficient allegation, the Court cited the following paragraph:

> [Defendants] [r]epresented to Seville that if the industrial machinery listed in Exhibits A and C were shipped on consignment to either Southmost, Tri–State, Gellman or

---

12. This section provides as follows:

> A plan fiduciary, employer, plan participant, or beneficiary, who is adversely affected by the act or omission of any party under this subtitle with respect to a multi-employer plan, or an employee organization which represents such a plan participant or beneficiary for purposes of collective bargaining, may bring an action for appropriate legal or equitable relief, or both.

ERISA § 4301(a)(1), 29 U.S.C. § 1451(a)(1). "This subtitle" refers to subtitle E of ERISA, 29 U.S.C. §§ 1381–1453.

13. The fact that punitive damages are available in an action under ERISA § 4301, 29 U.S.C. § 1451, and are not available in an action under ERISA § 502(a), 29 U.S.C. § 1132(a), does not change this result. *Cf. Colteryahn*, No. 86–2428, 1993 WL 120457, at *4 (finding that plaintiff may seek punitive damages in action under § 1451), *with Pane*, 868 F.2d at 635 n. 2.

14. The Court recognizes that other courts have refused to recognize a fraud cause of action in cases brought under § 502(a). *See Sanson v. General Motors Corp.*, 966 F.2d 618, 622 (11th Cir.1992); *Roberts v. Thorn Apple Valley, Inc.*, 784 F.Supp. 1538 (D.Utah 1992). These cases,

Alfieri, that the industrial machinery would be resold, and that the purchase price paid by Seville for this equipment along with a 50% pro rata share of the profits resulting from resale would be distributed. *Id.* at 791 n. 6.

Reviewing plaintiffs' allegations set forth in Counts XIV and XV of the complaint, the Court finds that they have satisfied the flexible standard adopted by the Third Circuit. Therefore, defendant's motion to dismiss Counts XIV and XV will be denied.

### 3. Claims for breach of fiduciary duty

■■■ Plaintiffs urge this Court to recognize federal common law claims for breach of fiduciary duty. In support of their claims, plaintiffs cite *Slice v. Norway,* 978 F.2d 1045 (8th Cir.1992) (per curiam), as "apparently recogniz[ing] the existence of such a claim." (Plaintiffs' brief at 32). In *Slice,* the Court of Appeals for the Eighth Circuit remanded the case to the district court for further proceedings to determine whether the plaintiff had stated a claim "under either an express provision of ERISA or federal common law." *Slice,* 978 F.2d at 1046. The Court of Appeals in *Slice* had previously noted that the defendant was a fiduciary as defined in ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). Based on this finding, the Court of Appeals strongly suggested that the plaintiff had stated a claim under the statutory provisions.

Plaintiffs do not cite any authority recognizing a federal common law claim for breach of fiduciary duty.[15] Nor does this Court believe that such a claim would be consistent with the comprehensive statutory scheme established under ERISA, which augments the common law by defining fiduciaries in *"functional* terms of control and authority over the plan." *Mertens,* —— U.S. at ——, 113 S.Ct. at 2071.[16] "The authority of courts to develop 'federal common law' under ERISA is not the authority to revise the text of the statute." *Mertens,* —— U.S. at ——, 113 S.Ct. at 2070. Under these circumstances, the Court will not recognize plaintiffs' federal law claims for breach of fiduciary duty.

Therefore, plaintiffs' claims for breach of fiduciary duty set forth in Count XVI and XVII will be dismissed.

### 4. Claims for unjust enrichment

■■■ In their complaint, plaintiffs assert claims for unjust enrichment. In support of these claims under federal common law, plaintiffs cite *Plucinski v. I.A.M. National Pension Fund,* 875 F.2d 1052 (3d Cir.1989), and *Luby v. Teamsters Health Welfare Pension Funds,* 944 F.2d 1176 (3d Cir.1991). Plaintiffs, however, concede that MONY "correctly asserts that no claim for unjust enrichment exists where the relationship of the parties is founded upon a written agreement." Nevertheless, they assert that "the concept of unjust enrichment does provide an alternative measure of recovery." (Plaintiffs' brief at 45–46).

Because the relationships between MONY and the plaintiffs arise out of the purchase of the GIC contracts, plaintiffs have failed to state a claim for unjust enrichment. To the extent that plaintiffs assert a claim for unjust

---

however, do not address *Colteryahn,* and this Court is bound by the Third Circuit's decision.

**15.** Plaintiffs argue that the law "cited by MONY in itself demonstrates the viability of these claims." (Plaintiffs' brief at 44 n. 16) (*citing Applegate v. Fund for Constitutional Government,* 70 Ohio App.3d 813, 592 N.E.2d 878 (1990), *Umbaugh Pool Building Co., Inc. v. Scott,* 58 Ohio St.2d 282, 12 O.O.3d 279, 390 N.E.2d 320 (1979), and *Estate of Scott,* 455 Pa. 429, 316 A.2d 883 (1974). First, this Court notes that defendant obviously cited these cases in support of its motion to dismiss because it was unclear based upon plaintiffs' complaint that the claims were being asserted solely under federal common law. Second, to the extent that plaintiffs seek to rely on these cases as a basis for a similar federal common law rule, this Court is not persuaded. Plaintiffs fail to address the real issue. Properly understood, the issue is whether this Court should recognize a federal common law claim for breach of fiduciary duty in addition to the statutory claims authorized by ERISA.

**16.** In *Mertens,* the Supreme Court explained that by defining fiduciary status in functional terms rather than in terms of formal trusteeship, i.e., persons other than trustees could be deemed fiduciaries, Congress expanded "the universe of persons subject to fiduciary duties—and to damages—under § 409(a)." *Mertens,* —— U.S. at ——, 113 S.Ct. at 2071. Thus, *Mertens* may be understood as cautioning the courts against further expansion of this universe beyond what Congress has delineated by statute and incorporated by reference. In the instant case, plaintiffs have made no showing that the defendant owed fiduciary duties to the plaintiffs under the common law of trusts.

enrichment that would "contravene" the terms of the GIC contracts, they have failed to demonstrate the " 'particularly strong affirmative indication that such a right would effectuate statutory policy.' " *Luby,* 944 F.2d at 1186 (*quoting Van Orman,* 680 F.2d at 312–13).

Therefore, plaintiffs' claims for unjust enrichment set forth in Counts XVIII and XIX will be dismissed.

### 5. *Claims for conversion*

■ Finally, plaintiffs assert federal common law claims for conversion. In support of its motion to dismiss, defendant argues that "no court has recognized a federal common-law claim for conversion" and contends that such a claim "would not fill any gap in ERISA and, therefore, should not be recognized." (Defendant's reply brief at 35).

In support of their claim, plaintiffs rely on *State Street Bank & Trust Co. v. Mutual Life Insurance Co. of New York,* 811 F.Supp. 915 (S.D.N.Y.1993). The *State Street* decision, however, does not purport to recognize a federal common law cause of action. The district court in *State Street* merely held that "the funds under the GICs were sufficiently separate to support an action for conversion" under *Massachusetts* law. *State Street,* 811 F.Supp. at 925.

*Van Orman* instructs this Court not to " 'lightly create additional [ERISA] rights under the rubric of federal common law,' " *Van Orman,* 680 F.2d at 312, and the Supreme Court has cautioned courts against revising the statutory text under the auspicious of developing federal common law. *Mertens,* —— U.S. at ——, 113 S.Ct. at 2068–70. Thus, guided by these instructions and the absence of any authority recognizing such a conversion claim under ERISA, this Court declines plaintiffs' invitation to recognize such claims.

Accordingly, plaintiffs' claims for conversion set forth in Counts XX and XXI will be dismissed.

An appropriate Order will be issued.