**John H. COX, Appellant,**

v.

**KEYSTONE CARBON COMPANY, Richard Reuscher and William Reuscher.**

**Appeal of KEYSTONE CARBON COMPANY, Appellee.**

**No. 89–3404.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Jan. 22, 1990.

Decided Jan. 31, 1990.

spectively.

Joseph E. Altomare, Altomare & Barnhart, Titusville, Pa., for appellant.

Gary H. McQuone and David B. Fawcett, III, Buchanan Ingersoll, P.C., Pittsburgh, Pa., for appellee, Keystone Carbon Co.

Before SLOVITER, HUTCHINSON and COWEN, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

This is the second time plaintiff's ERISA claim is before us on appeal. On the first appeal, we affirmed the district court's order denying plaintiff a jury trial on his claim under section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), and directing a verdict in favor of defendant on plaintiff's claim of intentional infliction of emotional distress. We remanded so that the district court could consider further plaintiff's entitlement to relief and to a jury trial under ERISA section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). The district court, relying on subsequent authority of this court, determined that plaintiff's claim seeking benefits under that section did not give rise to a right to a jury, and reaffirmed its earlier order granting summary judgment to defendant. Plaintiff appeals.

## I.

### Facts and Procedural History

Plaintiff John Cox began working for defendant Keystone Carbon Company in 1979, and continued as its comptroller until his termination on June 28, 1983. On March 28, 1983, plaintiff took a leave of absence to undergo triple bypass surgery.

He returned to work on a trial, temporary, part-time basis on June 28, 1983 and was discharged upon his return. After his termination, Cox applied for long-term disability and medical insurance benefits from the third party insurance carrier with whom Keystone carrier insurance. Ultimately, although Keystone opposed Cox's application, Cox was granted disability benefits but was denied medical insurance. At the time of trial, he had been unsuccessful in his attempt to procure medical and life insurance and to find alternative employment.

Cox filed a five count complaint against Keystone and its president and vice-president, Richard Reuscher and William Reuscher respectively. On this appeal, the only count remaining is Count I, alleging that Keystone violated section 510 of ERISA, 29 U.S.C. § 1140, by discharging him in order to interfere with his attainment of employee benefits. The matter was originally tried before a jury because the district court had denied Keystone's

motion to strike Cox's demand for a jury trial on his ERISA claim. Following the jury's return of a verdict in favor of Cox for $250,000, the court granted Keystone's motion for a new trial, ruling that Cox was not entitled to a jury trial on the ERISA claim. By stipulation of the parties, the prior record was submitted to the court for determination of the ERISA claim. The district court entered judgment in favor of Keystone.

On appeal, this court in *Cox v. Keystone Carbon Co. (Cox I)*, 861 F.2d 390 (3d Cir. 1988), rejected Cox's argument that section 510 of ERISA itself created a legal right to recovery for which the Seventh Amendment commands a jury trial. We stated that the procedural and remedial sections of a statute, in this case section 502 of ERISA, 29 U.S.C. § 1132, must be examined to determine if a jury trial must be afforded. We also rejected the contention advanced by Cox that courts are free to create remedies outside the six provisions contained in section 502(a).

In *Cox I*, we held that subsection 502(a)(3), which provides that a civil action may be brought by, *inter alia*, a beneficiary to enjoin any act or practice which violates the Act or a plan "or to obtain other equitable relief," was meant to provide only equitable relief. Thus, the district court had not erred in denying Cox a jury trial based on that section. We remanded the case to the district court to allow it to determine in the first instance whether Cox stated a claim for relief under section 502(a)(1)(B), whether that claim was legal or equitable in nature, and whether Cox had a right to a jury trial thereon.

On remand, the district court rejected Keystone's contention that Cox had not presented a claim under section 502(a)(1)(B), construing Cox's complaint as one seeking benefits due him under Keystone's various employee benefit plans.

Nonetheless, it held that when analyzed under Third Circuit law, the claim for benefits was equitable in nature and that therefore Cox had no right to a jury trial. The court adhered to its earlier judgment for the defendant. Cox appeals.

## II.

### *Right to a Jury Trial under ERISA*

Cox's substantive ERISA claim is based on section 510 of ERISA which prevents interference with rights protected under that Act.[1] Section 502(a)(1)(B) provides:

> A civil action may be brought—
>
> (1) by a participant or beneficiary—
>
> . . . .
>
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

29 U.S.C. § 1132(a)(1) (1982).

Cox's claim that the Seventh Amendment entitles him to a jury trial has been dealt a fatal blow by earlier decisions of this court. In *Turner v. CF & I Steel Corp.*, 770 F.2d 43 (3d Cir.1985), *cert. denied*, 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986), we held that employees who sued under ERISA to receive benefits under an applicable plan were not entitled to a jury trial under section 502(a)(1)(B). Thereafter, in *Pane v. RCA Corp.*, 868 F.2d 631 (3d Cir. 1989), we considered whether an employee who sued the employer for severance benefits granted to other employees was entitled to a jury trial for his ERISA claim. We relied on our opinion in *Turner* to hold that a section 502(a)(1)(B) claim for benefits was equitable in nature, and that hence plaintiff was not entitled to a jury trial. *Id.* at 636. Cox argues that *Pane* was wrongly decided. All panels of this court

---

**1.** The section reads, in pertinent part:
It shall be unlawful for any person to discharge ... a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan [or] this subchapter ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan [or] this subchapter.... The provisions of section 1132 [section 502] of this title shall be applicable in the enforcement of this section.
29 U.S.C. § 1140 (1982) [section 510 of the act].

are bound to the holding. *See* Third Circuit Internal Operating Procedures 8.C.

Cox seeks to distinguish *Pane* by arguing that his section 502(a)(1)(B) claim is not one for "benefits" under the first clause of section 502(a)(1)(B), "to recover *benefits* due to him under the terms of the plan," which was the basis of the *Pane* claim. He argues that in contrast his claim falls under the second clause of section 502(a)(1)(B), "to enforce his *rights* under the terms of the plan." He contends that the rights referred to under this clause are rights other than rights to benefits, and that the substantive right he wishes to enforce is the right to be free from tortious interference guaranteed by section 510, which is a legal claim. Finally, he argues that because it is not feasible to reinstate him to his prior position, his claim for compensatory damages must be tried before a jury.

We agree with Keystone that the statutory language of section 502(a)(1)(B) itself requires rejection of Cox's argument. The clause on which he relies gives a claimant only action "to enforce his rights *under the terms of the plan.*" § 502(a)(1)(B) (emphasis added). Cox is simply wrong in arguing that unless the second clause of section 502(a)(1)(B) is the enforcement mechanism for section 510, it would be duplicative of the first clause. There are "rights" which can be granted under a plan separate and distinct from the recovery of benefits awarded thereunder. For example, a plan must incorporate an appeal process for participants and beneficiaries. *See, e.g.,* 29 U.S.C. § 1133. A suit to enforce that right fits within the second clause of section 502(a)(1)(B), *see, e.g., Blau v. Del Monte Corp.,* 748 F.2d 1348 (9th Cir.), *cert. denied,* 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985), and is patently equitable in nature. Thus, to the extent that Cox's claim is, as construed by the district court, one for benefits under the plan, we agree with the district court that *Pane* governs, and that Cox was not entitled to a jury trial. To the extent that Cox seeks compensatory damages for tortious interference, that claim does not fall within section 502(a)(1)(B).

Finally, Cox's argument that Congress created a legal right when it created section 510 to which the right to a jury trial attaches has already been rejected by this court once and we adhere to the well reasoned conclusion set forth in *Cox I,* 861 F.2d at 392–94. *See also Pane,* 868 F.2d at 637 (no reason to assume that Congress intended section 510 to have a legal remedy, contrary to the explicit intention to allow equitable remedies in section 502(a)).

## III.

### *The Merits of Cox's ERISA Claim*

■ Cox also contends that on the merits the district court erred in granting judgment in favor of Keystone. The standard of review is whether the district court decision was clearly erroneous. *See* Fed.R. Civ.P. 52(a). In applying that standard, an appellate court may not substitute its findings for that of the district court; it may only make an assessment of whether there is enough evidence to support such findings. *Cooper v. Tard,* 855 F.2d 125, 126 (3d Cir.1988).

■ In order to prove that Keystone tortiously interfered with Cox's attainment of benefits (in particular, medical and disability benefits) and consequently violated section 510 of ERISA, Cox had to show that the fact he would receive benefits played a role in Reuscher's decision to terminate him on the day that he returned to work. Under the medical and disability insurance policies that covered Keystone employees, an employee is entitled to benefits if the employee is "unable to work because of disability" at the time of discharge. App. at 136, 139. Under Cox's theory, Reuscher in order to avoid the cost to the company of an increase in insurance premiums, waited to terminate Cox until he returned to work when he would not be considered to fit within the policies' coverage.

Reuscher, Keystone's president, testified that Cox was fired because of his deficiencies in the job, that this decision was discussed with the company's independent accountant, that they postponed the dis-

charge during the IRS' audit of Keystone, and that during that audit Cox became ill. App. at 50. Reuscher testified that he did not like to terminate employees over the phone, and this was why he waited to discharge Cox until he returned. He also testified that he had held several meetings with Cox and that Cox was aware of the general dissatisfaction with his job performance long before his illness.

J. Stalder from Price Waterhouse corroborated Reuscher's testimony and testified that Reuscher spoke to him about his dissatisfaction with Cox's job performance before Cox's illness. Supp.App. at 81–82. Keystone also presented testimony that showed that its insurance premiums do not change if employees are terminated as disabled, Supp.App. at 92, that its medical insurance premium was based on estimates and that the illness of one person would not lead to an increase in its premium, *id.* at 89–91, and that under Keystone's pension plan, Keystone would not save money by terminating an employee because the plan incorporated an assumption of employee turnover, *id.* at 87–89.

The district court found that Reuscher's testimony was credible and convincing, that Keystone was dissatisfied with Cox's performance, and that "this alone was the basis for the decision to terminate" Cox. App. at 55. The court concluded that Cox's termination did not violate ERISA.

Cox points to evidence which suggests a contrary result. We, however, are not the primary factfinder and therefore even if we would have decided the factual issue differently on the basis of the record before us, we cannot conclude that the district court's factual findings are clearly erroneous.

## IV.

### Conclusion

For the foregoing reasons, we will affirm the judgment of the district court.