Robert KUESTNER and Anne Marie Kuestner, h/w Plaintiffs,

v.

HEALTH AND WELFARE FUND & PENSION FUND OF THE PHILADELPHIA BAKERY EMPLOYERS AND FOOD DRIVER SALESMEN'S UNION LOCAL NO. 463 AND TEAMSTERS UNION LOCAL NO. 676; and Gerald J. Morse, Jr., Defendant.

Civil Action No. 97–1360.

United States District Court, E.D. Pennsylvania.

June 4, 1997.

Order Amending Decision June 18, 1997.

Bruce S. Marks, Spector, Gadon & Rosen, P.C., Philadelphia, PA, for Plaintiffs.

Eric A. Tilles, Morgan, Lewis & Bockius, Philadelphia, PA, for Defendants.

## MEMORANDUM

DuBOIS, District Judge.

This matter is before the Court on the Motion of Defendants, Health and Welfare

Fund of the Philadelphia Bakery Employers and Food Driver Salesmen's Union Local No. 463 and Teamsters Local Union No. 676 ("Health and Welfare Fund") and Gerald J. Morse, Jr., to Strike and to Dismiss or, in the Alternative, for Summary Judgment ("Motion to Dismiss"). In the Complaint plaintiffs assert federal claims under the Employee Retirement Income Security Act ("ERISA") and under federal common law for fraud arising under ERISA, as well as state law claims for breach of contract, breach of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa.Stat.Ann. § 201–1 *et seq.*, and bad faith under 42 Pa.Stat.Ann. § 8371. The Court has jurisdiction over plaintiffs' federal claims under 28 U.S.C. § 1331 and over their state claims under 28 U.S.C. § 1367(a).

The parties have previously stipulated to the dismissal without prejudice of a third defendant, Pension Fund of the Philadelphia Bakery Employers and Food Driver Salesmen's Union Local No. 463 and Teamsters Local Union No. 676 ("Pension Fund"), and plaintiffs' claims for breach of contract and breach of the Pennsylvania Unfair Trade Practices and Consumer Protection Law. Stipulation for Dismissal Without Prejudice (Document No. 7, filed May 6, 1997). Defendants now argue that 1) plaintiffs' ERISA claims are moot, 2) plaintiffs may not assert a claim for federal common law fraud arising under ERISA in the instant case, plaintiffs are not entitled to relief under § 502(a)(3) of ERISA, 3) 29 U.S.C. § 1132(a)(3), and 4) plaintiffs' state law claim for bad faith is preempted. Furthermore, defendants contend that if plaintiffs' ERISA claims are not dismissed they should be tried non-jury. In the alternative defendants argue they are entitled to summary judgment.

For the following reasons, the Motion to Dismiss will be granted in part and denied in part, the Motion to Strike Plaintiffs' Jury Demand will be granted, and the Alternative Motion for Summary Judgment will not be considered at this time and instead will be denied as premature. Issues raised in the Alternative Motion for Summary Judgment may be presented at the conclusion of discovery by similar motion or at trial.

## I. BACKGROUND [1]

Plaintiff Robert Kuestner is a member of the Food Driver Salesmen's Union Local No. 463 ("Union"). As a member of the Union he was covered by defendant Health and Welfare Fund of the Philadelphia Bakery Employers and Food Driver Salesmen's Union Local No. 463 and Teamsters Union Local No. 676 ("Health and Welfare Fund") at all times relevant to this lawsuit. The Health and Welfare Fund is an employment health benefit plan. Plaintiff Marie Kuestner ("plaintiff-wife") is Robert Kuestner's wife. She suffers from multiple sclerosis and was also covered by the Health and Welfare Fund at all relevant times.

In 1994, plaintiffs requested coverage for Betaseron therapy for plaintiff-wife under the prescription drug benefit plan ("PDP"). She was denied coverage for Betaseron under the PDP, but was granted coverage under the Major Medical Plan ("MMP"). The MMP has a lifetime benefit cap of two-hundred thousand dollars ($200,000) per illness. Coverage under the PDP was denied on the ground that injectable drugs were not covered by the PDP. Moreover, plaintiffs were told that they could not appeal the denial because the Board of Trustees had made a final decision. Plaintiffs decided they needed to preserve their remaining lifetime benefits for plaintiff-wife's future treatment so they chose not to reduce those benefits by purchasing Betaseron under the MMP.

In 1997, plaintiffs requested PDP coverage for Avonex therapy for plaintiff-wife. Coverage was again denied under the PDP. Again, plaintiffs were told that the denial was based upon the fact that injectables were not covered by the PDP, and that they could not appeal the Board of Trustees' final decision.

Plaintiffs allege that injectables were, at all relevant times, covered by the PDP. They further allege that they were denied PDP

---

1. The facts are based upon plaintiffs' allegations in the Complaint. *See infra,* Part II.A (discussing parameters for consideration of a Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted).

coverage in both instances because defendants realized that if coverage was "switched" to the MMP, defendant Health and Welfare Fund would save tens of thousands, if not hundreds of thousands, of dollars of prescription drug expense because the coverage would be limited by the lifetime cap. Finally, plaintiffs allege that defendant Morse was the mastermind of this scheme.

Plaintiffs request the following relief: 1) declaratory relief that Betaseron, Avonex, and similar injectable drugs are covered under the PDP; 2) compensatory damages and interest in excess of $30,000 for benefits which should have been paid, but were not paid, from May 1994 to date; 3) compensatory damages for pain, suffering, and emotional distress suffered by plaintiff-wife as a result of the loss of Betaseron therapy from May, 1994 through January, 1997; 4) treble damages under the Pennsylvania Unfair Competition and Consumer Protection Act; 5) punitive damages; 6) costs and attorney's fees; 7) such other relief as the Court may permit.

## II. STANDARD OF REVIEW

The Motion to Dismiss is based on 1) the alleged failure of plaintiffs to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) and 2) the alleged mootness of plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(1).

### A. Motion To Dismiss For Failure To State A Claim Upon Which Relief Can Be Granted Pursuant To Federal Rule Of Civil Procedure 12(b)(6)

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court may not consider anything outside the allegations of the Complaint. *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988). Furthermore, the Court must "accept all factual allegations in the Complaint as true and give the pleader the benefit of all reasonable inferences that can be fairly drawn therefrom." *Ditri v. Coldwell Banker,* 954 F.2d 869, 871 (3d Cir.1992) (citation omitted). "However, [the Court is] not required to accept legal conclusions either alleged or inferred from the pleaded facts." *Id.* (citation omitted). The question before the Court is not whether plaintiffs will ultimately prevail, but whether they can support their claim by proving any set of facts that would entitle them to relief. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

### B. Motion To Dismiss For Mootness Pursuant To Federal Rule Of Civil Procedure 12(b)(1)

Defendants argue that because they have provided coverage for Avonex under the PDP, plaintiffs' have received all of benefits to which they are entitled and their claims for declaratory relief are moot and should be dismissed. Motion to Dismiss, at 6. Any such dismissal would be pursuant to Federal Rule of Civil Procedure 12(b)(1), which allows a defendant to file a motion to dismiss based on lack of jurisdiction over the subject matter of a pending lawsuit. See *Daly v. Wigen,* No. Civ. A. 93–3139, 1994 WL 35003, *1 n. 3 (E.D.Pa. Feb.7, 1994) (analyzing a motion putatively made pursuant to Fed.R.Civ.P. 12(b)(6) as having been made under Fed. R.Civ.P. 12(b)(1) because "the issue of mootness is jurisdictional and relates to the very power of the Court to hear [a] case").

Attacks on subject matter jurisdiction may take two forms. First, a defendant may contend that jurisdiction was not properly pled (a "facial" attack). Second, a defendant may contend that jurisdiction does not actually exist in a particular case (a "factual" attack). See *Young v. Francis,* 820 F.Supp. 940, 943 (E.D.Pa.1993) (discussing the two types of attacks). Defendants in the instant case make a factual attack. In determining the merits of such an attack, the court may consider affidavits and other relevant evidence outside the pleadings. *Berardi v. Swanson Memorial Lodge No. 48 of Fraternal Order of Police,* 920 F.2d 198, 200 (3d Cir.1990). The burden of proof on this issue is placed on plaintiffs. *Lattanzio v. Security Nat'l Bank,* 825 F.Supp. 86, 88 (E.D.Pa. 1993).

### C. Defendants' Motion For Summary Judgment Is Premature

■ Defendants state that "[t]o the extent the Court relies [on] documents not referred to in or attached to the Complaint, the Court may treat the Rule 12(b)(6) portion of this motion as one for summary judgment under Rule 56." Motion to Dismiss, at 6 n. 3 (citing Fed. R.Civ. P. 12(b)(6)). They ask that the Court do so wherever necessary. Plaintiffs argue throughout their Memorandum of Law in Opposition to Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment ("Plaintiffs' Memorandum of Law") that because they have yet to conduct discovery a motion for summary judgment is premature and that the Court should not permit conversion of defendants' Motion to Dismiss into a Motion for Summary Judgment.

A district court has the discretion to act in the manner suggested by defendants. Fed. R.Civ.P. 12(b)(6). "This discretion generally will be exercised on the basis of a determination of whether or not the proffered material, and the resulting conversion form the Rule 12(b)(6) to the Rule 56 procedure, is likely to facilitate the disposition of the action." 5A Charles Alan Wright & Kenneth A. Graham, Jr., Federal Practice and Procedure § 1366 (2d ed.1990). Conversion may be improper when the motion to dismiss is filed before discovery begins or during its early stages. *Owens v. Hahnemann University*, Civ. A. No. 94–4654, 1995 WL 392516, at *2 (E.D.Pa. June 27, 1995) (citing *Brennan v. National Telephone Directory Corp.*, 850 F.Supp. 331, 335 (E.D.Pa.1994)).

The Court will not exercise its discretion to convert the Motion to Dismiss into a Motion for Summary Judgment because 1) the Motion was filed before discovery began and 2)

those exhibits outside of the pleadings that have been provided will not "facilitate the disposition of the action" at this time. Of course, the moving defendant, Health and Welfare Fund, may file another Motion for Summary Judgment after completion of discovery as set forth in the Court's Scheduling Order of May 20, 1997.

### III. DISCUSSION

#### A. Positions Of The Parties

Defendants argue that plaintiff-wife has been provided coverage for Avonex under the PDP and that plaintiffs' declaratory judgment claims are therefore moot and the Court does not have jurisdiction over plaintiffs' declaratory judgment claims. Plaintiffs contend that their claims are not moot because plaintiff-wife was not granted coverage for Betaseron under the PDP in 1994. Moreover, they argue that they are entitled to damages in the sum of $10,000 per year for each of the three years that plaintiff-wife was without Betaseron.[2] They also maintain that the instant case is not moot to the extent that they are entitled to attorney's fees and costs because defendant Health and Welfare Fund did not provide coverage for Avonex under the PDP until after this suit was instituted.

#### B. Restitutionary Damages Are Not Available

■ In general, ERISA plaintiffs do not have a right to compensatory or punitive damages. Plaintiffs recognize that rule of law, arguing that the damages requested in the instant case are not compensatory or punitive in nature, but rather "represent the value of the bargain' between the participant and the plan."[3] Plaintiffs' Memorandum of

---

**2.** Plaintiffs do not set forth in their Complaint the sections of ERISA on which they base their claims. However, it is apparent from plaintiffs, Memorandum of Law that the claims are based upon §§ 502(a)(1)(B) and 502(a)(3). The Court will analyze plaintiffs' claims with respect to each of those sections.

**3.** The Court notes that in addition to compensation for the value of the Betaseron, plaintiffs request, in the *ad damnum* clause of the Complaint, "[c] compensatory damages for any dete-

rioration in Mrs. Kuestner's medical condition suffered by the loss of Betaseron therapy...." That claim is not mentioned in the body of the Complaint, nor do plaintiffs cite any authority in support of their claim for such damages.

To the extent plaintiffs' assert such a claim under ERISA, the Court concludes that the damages sought are compensatory in nature and are therefore unavailable under ERISA. Plaintiffs "had the option of obtaining an injunction or a declaratory judgment [so plaintiff-wife could] receive the [Betaseron] treatment during the time

Law, at 8. Thus, they label their requested relief "restitutionary damages." *Id.* In support of their claim, plaintiffs cite two Third Circuit cases which they argue stand for the proposition that restitutionary money damages are available in a lawsuit against a fiduciary under § 502(a)(3) of ERISA, *In re Unisys Corp.*, 57 F.3d 1255, 1261–62 (3d Cir.1995), *cert. denied sub nom., Unisys Corp. v. Pickering,* —— U.S. ——, 116 S.Ct. 1316, 134 L.Ed.2d 470 (1996) and *Pickering v. Unisys Corp.*, —— U.S. ——, 116 S.Ct. 1316, 134 L.Ed.2d 469 (1996), and *Curcio v. John Hancock Mutual Life Ins. Co.*, 33 F.3d 226 (3d Cir.1994). Defendants contend that the damages requested by plaintiffs are actually compensatory damages and are not available in this case.

■ So far as plaintiffs' claims arise under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B),[4] it is beyond dispute that they are not entitled to compensatory or punitive damages. *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 145–48, 105 S.Ct. 3085, 3091–93, 87 L.Ed.2d 96 (1985) (construing the limits of recovery under § 502(a)(1)(B), and stating that in the "Liability for Breach of Fiduciary Duty" provision of ERISA, § 409(a), 29 U.S.C. § 1109(a), "Congress did not provide, and did not intend the judiciary to imply, a cause of action for extra-contractual damages caused by improper or untimely processing of benefit claims."). And, it is exactly such damages that plaintiffs seek.

The fact that the compensation requested by plaintiffs is the monetary value of the Betaseron plaintiff-wife did not take because PDP coverage of the drug was denied does not convert the damages claim into a claim for restitution. Nor does the fact that plaintiffs have labeled their request as one for restitution change its true nature as a request for compensation. The futility of plaintiffs' attempt to recharacterize their claim for compensatory damages as restitution is evidenced by the fact that they request, in the Complaint, *"Compensatory damages* in excess of $30,000 for benefits which should have been paid, but were not paid, from May 1994 through the current date." Complaint, at 9 (emphasis added). Such compensation is simply not available under § 502(a)(1)(B). The remedy provided for improper administration of a medical plan governed by ERISA is not compensation for the value of the treatment or medication denied, but rather equitable relief requiring the proper administration of such a plan.

■ Moreover, the Court concludes that plaintiffs have not stated a claim for "restitutionary damages" under § 502(a)(3) of ERISA.[5] Since 1993, the Third Circuit has recognized that lawsuits for individualized equitable relief for breach of fiduciary obligations are proper, in certain circumstances, under § 502(a)(3). *See Bixler v. Central Pennsylvania Teamsters Health and Welfare Fund,* 12 F.3d 1292 (3d Cir.1993). The Supreme Court reached the same conclusion in *Varity Corp. v. Howe,* —— U.S. ——, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), decided in 1996. In *Varity Corp.* the Supreme Court emphasized that § 502(a)(3) only authorizes

---

that it would have benefitted her." *Durham v. Health Net,* No. C–94–3575 MHP, 1995 WL 429252, at *3 (N.D.Cal. June 22, 1995), *aff'd* 108 F.3d 337 (9th Cir.1997) (table). Now that the treatment period has passed she is not entitled to compensation for any deterioration that may have resulted. *See id.* at *3 ("Now that she is no longer a candidate for the treatment ... she does not have legal recourse under section 502(a)(1)(B) [of ERISA]."). To the extent that plaintiffs' deterioration claim is premised on state law, the Court concludes that such a claim "relates to" the denial of benefits and is therefore preempted under 29 U.S.C. § 1144(a). *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47–49, 107 S.Ct. 1549, 1552–54, 95 L.Ed.2d 39 (1987) (analyzing ERISA preemption in general); *infra,* Part III.D.

4. Section 502(a)(1)(B) provides: "A civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

5. Section 502(a)(3) provides: "A civil action may be brought by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).

"appropriate" equitable relief. *Id.* at ——, 116 S.Ct. at 1079. The *Varity Corp.* court noted that because of the "appropriateness" limitation on the relief available under § 502(a)(3), it "should [be] expect[ed] that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief [that available under § 502(a)(3)] normally would not be 'appropriate.'" *Id.* (citation omitted). In concluding in *Varity Corp.* that relief was available under § 502(a)(3), the Court stated that such relief was "appropriate" because the plaintiffs in that case could not proceed under any other section of ERISA and would therefore be without any remedy if § 502(a)(3) relief was denied. *Id.; see Ream v. Frey,* 107 F.3d 147, 152–53 (3d Cir.1997) (citing *Varity Corp.,* —— U.S. at ——, 116 S.Ct. at 1079, and noting the limited availability of individualized relief under § 502(a)(3)); *see also Mertens v. Hewitt Associates,* 508 U.S. 248, 256–258 & n. 8, 113 S.Ct. 2063, 2068–70 & n. 8, 124 L.Ed.2d 161 (1993) (concluding that compensatory and punitive damages are not available under § 502(a)(3)).

In the instant case, plaintiffs have available a remedy other than that provided by § 502(a)(3), and they have sought such relief—a declaratory judgment under § 502(a)(1)(B) recognizing plaintiff-wife's right to have injectable drugs, including Betaseron, covered by the PDP. *See infra,* Part III.C.1. Moreover, plaintiffs could have sought such a declaratory judgment at any time after Betaseron coverage under the PDP was refused. Because plaintiffs have always had, and continue to have, a sufficient equitable remedy under § 502(a)(1)(B), they are not entitled to what they label as "restitutionary damages."

Accordingly, the Court will grant defendants' Motion to Dismiss with respect to plaintiffs' claim for "restitutionary damages."

**C. Mootness**

Article III of the Constitution of the United States provides that a federal court may exercise jurisdiction only where there is an actual case or controversy to be decided.

*See, e.g., Golden v. Zwickler,* 394 U.S. 103, 108, 89 S.Ct. 956, 959–60, 22 L.Ed.2d 113 (1969). A case is moot when the issues are no longer live or a plaintiff can no longer benefit from the relief requested. *Murphy v. Hunt,* 455 U.S. 478, 481, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982); *Daly v. G.C. Wigen,* No. Civ. A. 93–3139, 1994 WL 35003, *1 (E.D.Pa. Feb.7, 1994). The Third Circuit has noted that "there is no precise test for ascertaining with precision whether a particular claim has become moot.... Such a determination therefore becomes an intensely factual inquiry, ... guided primarily by pragmatic considerations." *International Broth. of Boilermakers v. Kelly,* 815 F.2d 912, 915 (3d Cir.1987) (citations and quotations omitted). In undertaking such an inquiry, a court must consider that "'[t]he central question of all mootness problems is whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief.'" *Id.* (quoting *Jersey Central Power and Light Co. v. State of New Jersey,* 772 F.2d 35, 39 (3d Cir.1985)) (further citation omitted). Moreover, because this portion of the Motion to Dismiss is brought under Federal Rule of Civil Procedure 12(b)(1), the Court can and will look beyond the Complaint in answering that question. *See supra,* Part I.B.

**1. Betaseron Related Claims**

■ Although the Court concludes that plaintiffs fail to state a claim for the recovery of "restitutionary damages" arising from the denial of PDP coverage under §§ 502(a)(1)(B) or 502(a)(3), their claim for declaratory relief under §. 502(a)(1)(B) is not moot with respect to Betaseron. There is some evidence that because plaintiff-wife has been granted coverage for Avonex under the PDP she no longer needs PDP coverage for Betaseron or other injectable drugs. Motion to Dismiss, at Exhibits A & B. If that is in fact true, her claim may be moot. However, that evidence is insufficient to determine conclusively whether plaintiff-wife still needs coverage of Betaseron or other injectable drugs under the PDP. Thus, plaintiffs' claim is not moot.

Accordingly, the Court will deny the Motion to Dismiss with respect to plaintiffs' request for a declaration as to whether Betaseron and other injectable drugs are covered under the PDP. However, that denial is without prejudice to defendants' right to raise this issue by Motion for Summary Judgment after completion of discovery.

### 2. Avonex Related Claims

■ The parties agree that Avonex has been made available to plaintiff-wife under the PDP, obviating the need for a judgment declaring that Avonex must be made available under the PDP. Plaintiffs request no other relief with respect to Avonex. Thus, the only relief that the Court may provide with respect to Avonex is no longer necessary and the Court concludes that the Avonex claim is moot.

■ The parties do not agree as to when Avonex was made available. Although that fact is irrelevant to the mootness inquiry with respect to plaintiffs' request for declaratory judgment, it is the determining factor in the Court's inquiry as to whether plaintiffs' claim for attorney's fees and costs arising from the request for an Avonex-related declaratory judgment is moot. There is evidence to support each party's allegation with respect to whether Avonex was made available before or after the instant lawsuit was filed. If Avonex was made available before the filing of this lawsuit, plaintiffs are not entitled to attorney's fees and costs. However, if that medication was not made available until after the filing of this case, plaintiffs *might* be entitled to be declared the *de* facto prevailing party and awarded costs and attorney's fees. *See Murphy v. Employee Pension Plan of Fidelity Mutual Life Ins. Co.*, No. Civ. A. 92–6483, 1993 WL 235468, *2, 5 (E.D.Pa. June 28, 1993) (concluding that an ERISA plaintiff may qualify as a prevailing party even if the lawsuit settles or the case is made moot by a defendant's voluntary grant of the relief requested) (citations omitted), *vacated on other grounds* 16 F.3d 404 (3d Cir.1993) (consolidated appeals); *Petro v. Flintkote Co.*, 633 F.Supp. 10, 11–12 (N.D.Ohio 1986). Thus, plaintiffs' claim for attorney's fees with respect to the Avonex claim is not moot.

### D. Preemption

Defendants argue that Counts II through V of plaintiffs' Complaint are state law claims that are preempted by ERISA. The parties have stipulated to the dismissal without prejudice of Count II (Breach of Contract) and Count IV (Breach of the Pennsylvania Unfair Trade Practices and Consumer Practices Law). Stipulation for Dismissal Without Prejudice. Therefore, the Court need only determine whether Count III (Fraud) and Count V (Bad Faith) are preempted.

Plaintiffs assert in their Complaint that the PDP is an ERISA plan. Complaint, ¶¶ 3, 35. Defendants argue that because Counts III and V make allegations with respect to the PDP, those counts "relate to" an employee benefit plan governed by ERISA and are preempted under § 514(a) of ERISA, 29 U.S.C. § 1144(a). Motion to Dismiss, at 10 (citing Complaint, ¶¶ 41, 44, 50, 53). Defendants cite a litany of cases that it argues support preemption. Motion to Dismiss, at 10–12. Plaintiffs argue that their claims are not preempted for several reasons, each of which is addressed below.

### 1. Count III (Fraud) Is Preempted By ERISA

■ Plaintiffs argue that Congress has authorized the development of federal common law under ERISA. Citing *Ferry v. Mutual Life Ins. Co. of New York*, 868 F.Supp. 764 (W.D.Pa.1994), and a number of Third Circuit cases cited therein, plaintiffs contend that a claim for fraud is part of that common law, and that Count III of their Complaint is therefore not preempted.

In *Ferry*, the district court concluded "that the *[Carl] Colteryahn [Dairy, Inc. v. Western Pennsylvania Teamsters and Employers Pension Fund*, 847 F.2d 113 (3d Cir.1988) ] decision requires recognition of the plaintiffs' fraud claims." *Ferry*, 868 F.Supp. at 775. Although *Colteryahn* involved an action under the Multi–Employer Pension Plan Amendments Act ("MPPAA"), 29 U.S.C. §§ 1381–1453 (1982), the *Ferry* court concluded that the rationale articulated by the *Colteryahn* court was not limited to multiemployer funds. *Ferry*, 868 F.Supp. at 775.

Assuming *arguendo* that there is a limited federal common law fraud cause of action, the Court concludes that plaintiffs' alleged fraud claims do not fall within any such cause of action. In so ruling, the Court takes no position of the merits of the *Ferry* decision. Rather, the Court concludes only that there is no merit in plaintiffs' contention that the logic underlying *Ferry* requires recognition of that cause of action in this case.

*Ferry* relied primarily on Judge Becker's statements in *Colteryahn* that "as a general rule, a party should not be allowed to profit from its wrongs.... [T]his rule is particularly apposite when dealing with federally regulated *pension* plans[,]" *Colteryahn*, 847 F.2d at 121 (quoting *Reuther v. Trustees of Trucking Employees of Passaic and Bergen County Welfare Fund*, 575 F.2d 1074, 1078 (3d Cir.1978) (footnote omitted and emphasis added)), and that "[r]ecognizing a fraud claim in favor of the plaintiffs will serve to protect the employee benefit funds and, therefore, further the goal of protecting the participants' interests." *Ferry*, 868 F.Supp. at 775. Neither of those rationales applies in the instant case.

First, the ERISA plan in question is a medical plan, not a pension plan. The focus of a pension plan is financial and the only remedy that can make a defrauded plaintiff whole may be the replacement of the funds he invested in the plan. On the other hand, the focus of a court attempting to remedy the improper administration of a medical plan should be ensuring that the plan provides for a plaintiff's medical needs. Refunding the

value of the medical services allegedly denied is not necessary to effectuate the purpose of the plan.

Second, as the *Ferry* opinion noted, the *Colteryahn* court placed significant emphasis upon the fact that had it not recognized a federal common law cause of action for fraud arising under ERISA, the plaintiffs would have been without a remedy. *Ferry*, 868 F.Supp. at 774 (citing *Colteryahn*, 847 F.2d at 121).[6] Here, § 502(a)(1)(B) provides a remedy for the alleged wrong, obviating the need for an implied cause of action.

Third, plaintiffs maintain that the alleged fraud was committed because the Board of Trustees "realized if they 'switched' coverage from the Drug Plan to the Major Medical Plan, the [Health and Welfare] Plan would be able to save tens of thousands, if not hundreds of thousands, of dollars of prescription drug expense...." Complaint, ¶ 22 (emphasis added). That is, the alleged fraud was supposedly designed to maximize the funds available to the Health and Welfare Fund. Thus, recognizing a fraud claim in the instant case is not necessary to protect the employee benefit funds or to protect plaintiffs' rights, which are sufficiently protected under § 502(a)(1)(b) without implying a federal common law action for fraud.

In sum, there is no need to imply a federal common law fraud claim in the instant case because ERISA already provides an adequate remedy for the alleged wrong. Accordingly, defendants' Motion to Dismiss Count III will be granted.[7]

---

**6.** The fact that the *Colteryahn* plaintiffs would have been without a remedy, not why they would have been so situated, was the important factor in the *Colteryahn* court's decision to imply a federal common law cause of action in that case. The explanation as to why those plaintiffs would have been without a remedy is somewhat complex and only relevant to cases arising under the MPPAA. Therefore, the Court sees no need to discuss that explanation in this case.

**7.** Plaintiffs do not contend that they have set forth a state law fraud claim. No such claim could be set forth because the alleged fraud clearly "relates to" the denial of benefits and is therefore preempted under § 514(a) of ERISA if brought as a state law claim. 29 U.S.C. § 1144(a); *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47–49, 107 S.Ct. 1549, 1552–54, 95

L.Ed.2d 39 (1987) (discussing ERISA preemption in general); *Davidian v. Southern California Meat Cutters Union*, 859 F.2d 134, 135 (9th Cir.1988) (concluding state law fraud claim was preempted); *Reilly v. Blue Cross & Blue Shield United of Wisconsin*, 846 F.2d 416, 426 (7th Cir.1988) (same); *LaMonica v. Guardian Life Ins. Co. of America*, No. Civ. A. 96–6020(JEI), 1997 WL 80991, *6 (D.N.J. Feb. 20, 1997) (same, citing *Davidian* and *Reilly*).

Moreover, the Court notes that plaintiffs request, in the *ad damnum* clause of the Complaint, compensatory damages for "pain, suffering, and emotional distress suffered by Mrs. Kuestner [plaintiff-wife] as a result of the loss of Betaseron therapy...." However, no such claim is set forth in the body of the Complaint. To the extent that plaintiffs assert an emotional distress claim arising from the denial of Betaser-

## 2. Count V (Bad Faith) Is Not Preempted By ERISA

Count V of plaintiffs' Complaint asserts a claim for bad faith. That claim is brought pursuant to 42 Pa.Stat.Ann. § 8371, which provides for a variety of remedies if "in an action arising under an insurance policy, . . . the court finds that the insurer has acted in bad faith toward the insured. . . ." Plaintiffs argue that the claim is not subject to the preemption clause because their claim is within the protection of the ERISA savings clause, 29 U.S.C. § 1144(b)(2)(A). Defendants contend that the claim falls into an exception to the savings clause and is therefore preempted.

The savings clause provides that "[e]xcept as provided in subparagraph (B) nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance. . . ." 29 U.S.C. § 1144(b)(2)(A). Defendants contend that Count V is preempted because under ERISA's deemer clause, 29 U.S.C. § 1144(b)(2)(B),[8] which "deems" certain ERISA-governed plans not to be insurers, the Health and Welfare fund is deemed *not* to be an insurer. Defendants further contend that plaintiffs have conceded that the Health and Welfare Fund is self-insured. Therefore, argue defendants, claims against the Health and Welfare Fund are therefore not subject to the savings clause.

Defendants are correct in their assertion that the deemer clause proscribes state regulation of self-insured ERISA plans. *See Travitz v. Northeast Dept. ILGWU Health and Welfare Fund*, 13 F.3d 704, 710 (3d Cir.1994) (citing *FMC Corp. v. Holliday*, 498 U.S. 52, 61, 111 S.Ct. 403, 409, 112 L.Ed.2d 356 (1990)). However, plaintiffs have not conceded that the Health and Welfare Fund is such a plan. To the contrary, plaintiffs allege in the Complaint that the Health and Welfare Fund is *apparently* self-insured. Complaint, ¶ 10. On that issue plaintiffs state in their Memorandum of Law that they "have had no discovery to determine whether drug benefits were self-insured (as Plaintiffs alleged and believe) or covered by an insurance contract purchased by the Fund. Thus, Defendants' Motion for Summary Judgment is premature on this issue. . . ." Plaintiffs' Memorandum of Law, at 18. However, because defendants' argument likely requires judgment on Count V on their behalf as a matter of law *if* the Health and Welfare Fund is self-insured, defendants' Motion to Dismiss Count V is denied without prejudice to their right to raise that issue in a motion for summary judgment after completion of discovery.

## E. Plaintiffs Are Not Entitled To A Jury Trial On Their ERISA Claims

■ Relying primarily upon the Third Circuit's decision in *Cox v. Keystone Carbon Co.*, 861 F.2d 390 (3d Cir.1988) (*"Cox I"*) and *Cox v. Keystone Carbon Co.*, 894 F.2d 647, 649 (3d Cir.1990) (*"Cox II"*), defendants contend that plaintiffs' demand for a jury trial on its ERISA claims should be stricken.[9]

This Court recently struck a jury demand with respect to claims arising under ERISA §§ 502(a)(1)(B) and 502(a)(3) in *Slapkus v. QVC, Inc.*, Civ. A. No. 97–0002, 1997 WL 220244 (E.D.Pa. Apr.30, 1997). In that case, this Court held that the *Cox* cases were directly on point and that a jury trial is not available under §§ 502(a)(1)(B) or 502(a)(3). *Id.* Most important for the instant case, the Court noted in *Slapkus* that, as emphasized in *Cox II*, the Third Circuit has explicitly held that a jury trial is not available under

---

on coverage under the PDP, that claim is preempted. *See Pane v. RCA Corp.*, 868 F.2d 631, 635 (1989) ("State law claims of emotional distress arising out of the administration of an ERISA employee benefit plan are . . . preempted.") (citations omitted).

**8.** Section 1144(b)(2)(B) of ERISA provides, *inter alia:* "[n]either an employee benefit plan described in section 1003(a) of this title, which is not exempt under section 1003(b) of this title, (other than a plan established primarily for the purpose of providing death benefits), nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer . . . or to be engaged in the business of insurance . . . for the purposes of any law of any State purporting to regulate insurance companies [or] insurance contracts. . . ."

**9.** Defendants do not request that plaintiffs' demand for a jury trial on its state law claims be stricken.

§ 502(a)(1)(B). *See Cox II*, 894 F.2d at 649–50 (citing *Pane v. RCA Corp.*, 868 F.2d 631, 636 (3d Cir.1989)); *see Monfiletto v. John Hancock Healthplans, Inc.*, Civ. A. No. 90–5137, 1991 WL 231608, at *2 (E.D.Pa. Oct.31, 1991) ("It is well established in the Third Circuit that § 502(a)(1)(B) provides for only equitable relief and ... plaintiffs ... are not entitled to a jury trial.").

Plaintiffs argue that *Slapkus* did not take into account the Supreme Court's decision in *Mertens v. Hewitt Associates*, 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), which plaintiffs contend changed the law with respect to jury trials in ERISA cases. *Mertens* addressed the types of relief available under § 502(a)(3), not § 502(a)(1)(B). Because this Court has concluded that plaintiffs have failed to state a claim under § 502(a)(3), and because it is abundantly clear that *Mertens* had no affect on *Cox II* with respect to the Third Circuit's conclusion that a jury trial is not available under § 502(a)(1)(B), this Court need not consider whether *Mertens* has had any affect on *Cox II*. [10]

### F. Defendant Morse May Be A Fiduciary Under ERISA

█ Defendant Morse argues that plaintiffs have not alleged facts that, if proven, are sufficient to establish that he is a fiduciary of the Health and Welfare Fund.[11] Plaintiffs contend that defendant Morse designed the scheme behind the alleged fraud, and that to do so required his having sufficient control over the plan to qualify as a fiduciary.

The Court concludes that defendant Morse's Motion to Dismiss must be denied because, viewed in the light most favorable to plaintiffs, the Complaint alleges facts sufficient, if proven, to establish that he was a fiduciary. ERISA "provides that not only the persons named as fiduciaries by a benefit plan, see 29 U.S.C. § 1102(a), but also anyone else who exercises discretionary control or authority over the plan's management, administration, or assets, see § 1002(21)(A), is an ERISA 'fiduciary.'" *Mertens*, 508 U.S. at 251, 113 S.Ct. at 2066. The Complaint alleges that defendant Morse had sufficient discretion to design the fraudulent scheme. Complaint, ¶ 23. If plaintiffs prove that Morse had such discretion, he may be properly classified as a "fiduciary" for ERISA purposes.

The Court notes that defendant Morse argues that, as a matter of fact, his official responsibilities and actual power do not qualify him as a fiduciary. In support of his argument he cites 29 C.F.R. § 2509.75–8, which is a series of questions and answers relating to fiduciary responsibility under ERISA. Question D–2 lists a variety of administrative functions that may be performed by a person who does not qualify as a fiduciary, and defendant Morse provides an affidavit stating that his responsibilities are limited to those listed in question D–2. Reply Brief of Defendants in Support of Their Motion to Dismiss Plaintiffs' Complaint, at 7–8 & Exhibit A. Plaintiffs argue that discovery will be necessary for them to prove that defendant Morse designed the fraudulent scheme and that summary judgment is therefore inappropriate at this time.[12] Plaintiffs' Memoran-

---

**10.** In light of the Court's conclusion that *Cox II* and *Pane* are directly on point and controlling, the Court need not address those cases cited by plaintiffs their Memorandum in Opposition in which courts outside of the Third Circuit conclude that a jury trial is appropriate for certain ERISA claims.

**11.** Commingled with defendant Morse's argument is the Pension Fund's argument that it is a separate entity from the Health and Welfare Fund and that it should be dismissed as a defendant because none of the allegations made in the Complaint implicate the Pension Fund. The Court need not address this argument because the parties have stipulated to the dismissal without prejudice of the Pension Fund as a defen-

dant. Stipulation for Dismissal Without Prejudice (Document No. 7, filed May 6, 1997).

**12.** Defendant Morse also contends that plaintiffs have "conceded" that the Board of Trustees took the final action concerning both Avonex and Betaseron, and that he therefore could not have been a fiduciary. Reply Brief of Defendants in Support of Their Motion to Dismiss Plaintiffs' Complaint, at 7–8 (citing Complaint, ¶¶ 14, 20, 26, & 31). However, defendant Morse provides no authority for his proposition that only individuals with the authority to make final decisions can be fiduciaries for ERISA purposes. Nor does the Court find plaintiffs' alleged "concession" dispositive under 29 C.F.R. § 2509.75–8. Thus, defendant Morse's Motion to Dismiss will

dum of Law, at 22. Because discovery is in its nascent stage the Court has concluded that a Motion for Summary Judgment is premature at this time. *See supra*, Part II.C. Thus, the Motion to Dismiss will be denied without prejudice to defendant Morse's right to raise this issue in a Motion for Summary Judgment after completion of discovery.

## IV. CONCLUSION

For the reasons set forth above the Motion to Dismiss will be granted in part and denied in part, the Motion to Strike will be granted, and the Motion for Summary Judgment will be denied as premature.

An appropriate order follows.

### *ORDER*

**AND NOW**, to wit, this 4th day of June, 1997, upon consideration of the Motion of Defendants, Health and Welfare Fund of the Philadelphia Bakery Employers and Food Driver Salesmen's Union Local No. 463 and Teamsters Local Union No. 676 and Gerald J. Morse, Jr., to Strike and to Dismiss or, in the Alternative, for Summary Judgment (Document No. 4, filed April 8, 1997), Memorandum of Law of Plaintiffs, Robert and Anne Marie Kuestner, in Opposition to Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment (Document No. 6, filed May 6, 1997), and Reply Brief of Defendants in Support of Their Motion to Dismiss Plaintiffs' Complaint (Document No. 8, filed May 16, 1997), for the reasons set forth in the Memorandum accompanying this Order, **IT IS ORDERED** that Defendants' Motion to Strike and to Dismiss or in the Alternative is **GRANTED IN PART** and **DENIED IN PART**, as follows:

1. The Motion to Dismiss plaintiffs' claim for declaratory judgment with respect to Avonex is **GRANTED;**

2. The Motion to Dismiss plaintiffs' claim for declaratory judgment with respect to Betaseron and other injectable drugs is **DENIED;**

3. The Motion to Dismiss Count III, plaintiffs' fraud claim, is **GRANTED;**

4. The Motion to Dismiss Count V, plaintiffs' bad faith claim, is **DENIED;** and,

5. The Motion to Strike plaintiffs' jury demand with respect to their Employee Retirement Income Security Act claims is **GRANTED.**

**IT IS FURTHER ORDERED** that the Alternative Motion for Summary Judgment is **DENIED AS PREMATURE** without prejudice to defendants right to file a second Motion for Summary Judgment after completion of discovery.

**IT IS FURTHER ORDERED** that the denial of defendants' Motion to Dismiss as to certain issues is **WITHOUT PREJUDICE** to defendants right to address those issues by motion for summary judgment after completion of discovery and/or at trial.

### *ORDER*

**AND NOW**, to wit, this 18th day of June, 1997, upon consideration of Plaintiffs' Motion to Amend the Court's Order and Opinion dated June 4, 1997, and for a Statement pursuant to 28 U.S.C. § 1292(b), **IT IS ORDERED** that Plaintiffs' Motion to Amend the Court's Order and Opinion dated June 4, 1997, and for a Statement pursuant to 28 U.S.C. § 1292(b) is **GRANTED IN PART AND DENIED IN PART**, as follows:

1. The Order of June 4, 1997, is **AMENDED** so as to **ADD** as paragraph 6:

Defendant's Motion to Dismiss with respect to plaintiffs' claim for "restitutionary damages" is **GRANTED;** and,

2. That part of Plaintiffs' Motion which requests a Statement pursuant 28 U.S.C. § 1292(b) is **DENIED** on the ground that the Court does not conclude that there is a substantial ground for difference of opinion with respect to the issues addressed in its Memorandum and Order of June 4, 1997, and the Court does not believe that an immediate appeal of the Order will materially advance the ultimate termination of the litigation.

not be granted on the basis of this alleged "con-    cession."